922 P.2d 536 (1996)
Val Davis DAY, Appellant,
v.
Eric ZUBEL, Individually and Eric Zubel, Chtd., Respondents.
No. 26579.
Supreme Court of Nevada.
August 16, 1996.
*537 Barker, Gillock, Koning & Brown and Janet S. Markley, Las Vegas, for Appellant.
Rawlings, Olson, Cannon, Gomley & Desruisseaux and Peter M. Angulo, Las Vegas, for Respondents.

OPINION
ROSE, Justice:
Val Davis Day filed a complaint for legal malpractice against Eric Zubel when Zubel failed to file civil rights claims on Day's behalf. The district judge granted Zubel's motion for summary judgment on the following grounds: (1) the statute of limitations expired on March 15, 1993, which was before Day met with Zubel; and (2) Day's alleged cause of action contained no viable underlying claims. We conclude the district judge's grant of summary judgment was improper.

FACTS
In September 1982, Day was convicted of and imprisoned for sexual assault. Subsequently, Day's appeal of his conviction was processed first by the state public defender's office and then by the county public defender's office. Pursuant to its decision not to allocate personnel to habeas corpus files until higher priority files were processed, the state public defender's office filed Day's petition for a writ of habeas corpus in district court after waiting for two and one-half years. Consequently, the writ petition was denied as untimely. After the writ petition was denied, the state public defender's office transferred Day's file to the county public defender's office, which subsequently lost the file, thereby delaying action on Day's claim for another one and one-half years. On March 15, 1991, eight and one-half years after Day's conviction, the district court finally granted Day's writ petition for the following reasons: (1) his incarceration was the result of a defective identification, (2) discrepancies existed in the forensic evidence, (3) he was represented by incompetent counsel, and (4) the prosecutor engaged in misconduct. As a result of the grant of Day's writ petition, his conviction was reversed and a new trial was ordered. On March 27, 1991, bail was posted and Day was released from prison. On May 17, 1991, the district judge ordered that all criminal charges against Day be dismissed.
In April 1993, Day retained Zubel to handle his potential federal civil rights claims against the police department, the prosecutor, and the state and county public defenders' offices arising under 42 U.S.C. §§ 1981 and/or 1983 for his alleged wrongful arrest, conviction, and incarceration. Zubel told Day that he would review his case and that the statute of limitations was rapidly approaching. Day unsuccessfully attempted to contact Zubel on several occasions following their initial meeting. In July 1993, Zubel informed Day that no claim could be filed on his behalf because the statute of limitations had expired on March 15, 1993, prior to their initial meeting.
Day filed a complaint against Zubel alleging a cause of action for legal malpractice. Day alleged that the statute of limitations on his claims did not expire until May 17, 1993, and Zubel's failure to take timely action resulted in a loss of opportunity to realize compensation for his wrongful incarceration.
Zubel filed a motion for summary judgment, asserting that the statute of limitations had expired on March 15, 1993, two years after Day's writ petition was granted and one month before Day contacted Zubel, and therefore no viable claim for legal malpractice existed. Zubel further asserted that even if he had been able to timely file a civil *538 rights complaint on Day's behalf, two potential defendants, the prosecutor and the police department, were immune from prosecution pursuant to state and federal law; and the state and county public defenders' offices, the only other potential defendants, were immune from prosecution because they acted in a traditional role as attorneys and therefore could not have been state actors who violated Day's constitutional rights "under color of state law."
In his opposition to Zubel's motion for summary judgment, Day reiterated the contention that the statute of limitations did not expire until May 17, 1993, which was two years after Day's criminal charges were formally dismissed and several weeks after Day saw Zubel regarding his potential causes of action. Furthermore, while Day conceded that the prosecutor was afforded absolute immunity,[1] he still contended that a viable cause of action pursuant to 42 U.S.C. § 1983 existed against the state and county public defenders' offices because they violated his rights by virtue of their administrative decision to not allocate personnel to habeas corpus files. As evidenced in a letter to the county public defender's office, the state public defender's office admitted it was negligent in processing Day's appeal by virtue of the fact that it waited two and one-half years before it reviewed Day's file. The letter specifically described Day's situation as "appalling," and that Day "is likely innocent, but received improper representation at trial ..., on appeal ..., and in habeas corpus (this office)." Day alleged that his claim against the county public defender's office would also have been based on administrative neglect.
The district judge granted Zubel's motion for summary judgment, concluding that the statute of limitations commenced on March 15, 1991, when the petition for habeas corpus was granted, and that there were no viable underlying claims to be pursued because the state and county public defenders' conduct constituted traditional lawyer functions not cognizable in a "color of law" argument.
Day filed this timely appeal challenging the district judge's grant of summary judgment.

DISCUSSION
The required elements of a legal malpractice claim are: (1) an attorney-client relationship; (2) a duty owed to the client by the attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing the tasks which they undertake; (3) a breach of that duty; (4) the breach being the proximate cause of the client's damages; and (5) actual loss or damage resulting from the negligence. Sorenson v. Pavlikowski, 94 Nev. 440, 443, 581 P.2d 851, 853 (1978). Therefore, to maintain his claim of legal malpractice against Zubel, Day had the burden of showing that he and Zubel had established an attorney-client relationship, that Zubel had a duty to file his claim, that Zubel breached this duty, and that the failure to file his claim was the proximate and actual cause of damages to Day. Zubel's defense against the legal malpractice claim, and the basis of his motion for summary judgment, was that he owed no duty to Day because the statute of limitations on Day's claim expired before Zubel established an attorney-client relationship with Day and further that even if he negligently failed to file Day's claim before the statute of limitations expired, his negligence caused Day no actual loss because Day had no viable claims that could have been pursued.
Summary judgment is only appropriate when, after a review of the record viewed in a light most favorable to the non-moving party, there remain no issues of material fact. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). "In determining whether summary judgment is proper, the nonmoving party is entitled to have the evidence and all reasonable inferences accepted as true." Wiltsie v. Baby Grand *539 Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989).
This court's review of a summary judgment order is de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989). On appeal, this court is "required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its granting of summary judgment." Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981).

Statute of limitations issue
Day contends that genuine issues of material fact remain regarding the accrual date of the statute of limitations. The appropriate accrual date for the statute of limitations is a question of law only if the facts are uncontroverted. Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th Cir.1992). Here, both parties acknowledge the pertinent dates as true, and there is no conflicting evidence as to when a fact was known or reasonably should have been known, which is usually a question of fact. Kawai Farms, Inc. v. Longstreet, 121 Idaho 610, 826 P.2d 1322, 1326 (1992). Therefore, we conclude that the issue of when the statute of limitations commenced in Day's action is a matter of law to be determined by this court.
The United States Supreme Court has held that statutes of limitations apply to causes of action brought pursuant to 42 U.S.C. § 1983. Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Wilson was interpreted by the Ninth Circuit to mandate a two year statute of limitations for such actions in Nevada. Perez v. Seevers, 869 F.2d 425, 426 (9th Cir.), cert. denied, 493 U.S. 860, 110 S.Ct. 172, 107 L.Ed.2d 128 (1989).
While courts have not directly addressed the issue of whether a cause of action for a civil rights violation pursuant to 42 U.S.C. § 1983 accrues when the aggrieved is released from prison pending a new trial or when the charges against the aggrieved are formally dismissed, the courts have addressed this issue in regard to an aggrieved's cause of action for malicious prosecution. The United States Supreme Court recently reiterated the well recognized rule that the statute of limitations commences upon final termination of the original criminal proceeding in the claimant's favor. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
We conclude the aforementioned rule is applicable to the instant case even though the instant case is not a malicious prosecution action. We further conclude the final termination of the criminal proceedings occurred when criminal charges against Day were dismissed with prejudice, which occurred on May 17, 1991, and that the district judge erred in concluding that Day's proceeding terminated on March 15, 1991. The final termination of the proceedings occurred on May 17 because prior to that date it was impossible for Day to file his claim for wrongful arrest, conviction, and incarceration because he was still subject to retrial and could have been re-convicted on the underlying sexual assault claim. Such a conviction would have eviscerated his civil rights claims.

Viable underlying claim issue
Day also contends that genuine issues of material fact remain regarding the viability of his underlying claims against the state and county public defenders' offices. Day conceded that no viable claim existed against the police department for false arrest or against the prosecutor for misconduct, but he maintained that he still had claims akin to malicious prosecution against the state and county public defenders' offices pursuant to 42 U.S.C. § 1983.
To recover damages under 42 U.S.C. § 1983 in a case like this, Day must satisfy two elements. First, Day "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at ___, 114 S.Ct. at 2372. This element was satisfied when the district judge dismissed with prejudice all criminal charges pending against Day.
*540 Second, Day must prove that the defendants' representation of him during his unlawful imprisonment violated Day's constitutional rights and that defendants were acting under color of state law. The determination of whether a public defender acts under color of state law depends on the nature and context of the function he is performing. Georgia v. McCollum, 505 U.S. 42, 54, 112 S.Ct. 2348, 2356, 120 L.Ed.2d 33 (1992). "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). However, "a public defender may act under color of state law while performing certain administrative, and possibly investigative, functions." McCollum, 505 U.S. at 54, 112 S.Ct. at 2356 (citing Polk, 454 U.S. at 325, 102 S.Ct. at 453-54); see also Imbler v. Pachtman, 424 U.S. 409, 430-31 & n. 33, 96 S.Ct. 984, 994-96 & n. 33, 47 L.Ed.2d 128 (1975) (discussing line that separates administrative and investigative functions from those of an advocate); see, e.g., Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (public defender acted "under color of state law" when making hiring and firing decision on behalf of the state).
Zubel does not dispute that the state and county public defenders' offices violated Day's constitutional rights; however, he argues that the state and county public defenders' offices were not acting under color of state law when the violations occurred and therefore no viable cause of action under § 1983 existed. Our analysis is therefore restricted to determining whether a genuine issue of material fact exists regarding whether the state and county public defenders' offices acted under color of state law when the alleged violations occurred.
In support of his contention that the state and county public defenders' actions were traditional lawyer functions and therefore not conducted under color of state law, Zubel cites Franklin v. Oregon, State Welfare Division, 662 F.2d 1337, 1345 (9th Cir.1981), a Ninth Circuit Court of Appeals' decision that concluded that a delay in filing an appeal was not an action under color of state law. In further support, Zubel states that a public defender's decision not to file a frivolous suit is within the scope of traditional lawyer functions. See Polk, 454 U.S. at 312, 102 S.Ct. at 446-47. Zubel argued that Polk is directly on point because the allegation raised in that casethat the public defender injured the appellant while acting pursuant to administrative rules and procedures for handling criminal appealsis identical to the allegation raised in Day's underlying claim. We conclude that these cases cited by Zubel are not dispositive because in both cases the individual attorney made a unilateral decision either to delay or to not file an appeal on behalf of his/her client after the case had been assigned to the attorney, whereas in the instant case, no attorney was apparently even assigned to the habeas corpus proceedings.
The district judge said that there was "no question in his mind" that the actions of the public defender, and any actions of a prosecutor, were traditional lawyer functions. We disagree. We conclude that a genuine issue of material fact exists regarding whether the state and county public defenders' actions of (1) failing to assign personnel to handle Day's writ petition and (2) losing the writ petition were administrative functions or traditional lawyer functions. Therefore, summary judgment was improperly granted on this issue, and we remand this case to the district court for further proceedings.

CONCLUSION
We conclude, as a matter of law, that the statute of limitations commenced on May 17, 1991, the date the district judge dismissed all criminal charges against Day. We further conclude that genuine issues of material fact remain regarding whether Day had a viable underlying claim against the state and county public defenders' offices. Therefore, the grant of summary judgment is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.
STEFFEN, C.J., and YOUNG and SHEARING, JJ., concur.
SPRINGER, J., dissents.
*541 SPRINGER, Justice, dissenting:
The majority notes the trial judge's comment that there was "no question in his mind" that the actions of the public defender and the prosecutor were traditional lawyer functions. With reference to the trial judge's opinion, the majority opinion merely states, "We disagree," without stating any reasons for the disagreement. In my opinion the trial judge was right. The attorney was engaging in traditional lawyer functions and should not be held liable; therefore, I dissent.
NOTES
[1] Day's opposition motion asserted that the police department did not enjoy the same immunity if its investigative irregularities, recognized by the district judge, qualified as actions under "color of state law." However, whether there was a viable claim against the police was not addressed in district court, and Day did not raise the issue on appeal. Therefore, the issue will not be addressed in this opinion.