55 P.3d 93

**James R. GLAZE, Jr., a married man, Plaintiff/Appellant,**

v.

**Eric A. LARSEN, Defendant/Appellee.**

**No. 2 CA–CV 2001–0196.**

Court of Appeals of Arizona. Division Two, Department A.

Sept. 24, 2002.

As Corrected Oct. 17, 2002.

---

The Kerley Firm, By James K. Kerley, Sierra Vista, for Plaintiff/Appellant.

Chandler, Tullar, Udall & Redhair, LLP, By D. Burr Udall and Peter Akmajian, Tucson, for Defendant/Appellee.

## OPINION

FLORÉZ, J.

¶ 1 Appellant James Glaze challenges the trial court's order granting appellee Eric Larsen's motion to dismiss Glaze's complaint for legal malpractice on the ground that the complaint was barred by the statute of limitations. Larsen had represented Glaze in a criminal matter, both at trial and on appeal. Glaze contends that the statute of limitations on his legal malpractice action did not begin to run until the criminal proceeding was dismissed with prejudice. We agree and reverse.

¶ 2 Because this issue involves a question of law, we review the trial court's ruling de novo. *See Manterola v. Farmers Ins. Exch.,* 200 Ariz. 572, 30 P.3d 639 (App.2001). Additionally, we bear in mind that the use of the statute of limitations as a defense is not favored. *Id.*

¶ 3 The material facts are undisputed. Following a jury trial, Glaze, then a Pima County deputy sheriff, was convicted of sexually abusing another deputy sheriff during an off-duty visit to her home. Judge Donfeld suspended the imposition of sentence and placed Glaze on probation for one year. This court affirmed Glaze's conviction and probationary term on appeal. *State v. Glaze,* No. 2 CA–CR 96–0145 (memorandum decision filed Jan. 14, 1997). Larsen represented Glaze on appeal. Represented by different counsel, Glaze later filed a petition for post-conviction relief pursuant to Rule 32, Ariz. R.Crim. P., 17 A.R.S., in which he alleged Larsen had been ineffective at trial. Judge Donfeld summarily dismissed the petition, denying relief. Although this court granted Glaze's petition for review, we denied relief. *State v. Glaze,* No. 2 CA–CR 97–0400–PR (memorandum decision filed June 23, 1998). Three months later, however, we granted Glaze's motion for reconsideration, concluding that Glaze had raised a colorable claim of ineffective assistance of counsel because Larsen had failed to request a jury instruction on lack of

sexual motivation. We therefore vacated our memorandum decision and remanded the case to Judge Donfeld for an evidentiary hearing.

¶ 4 After the evidentiary hearing, Judge Donfeld granted Glaze a new trial, finding that Larsen had been ineffective in failing to request a jury instruction on lack of sexual motivation. Specifically, Judge Donfeld found that "the failure to request this jury instruction was an oversight on the part of [Larsen]" and "the failure to request the instruction was prejudicial to [Glaze's] case." Before the retrial was held, however, Glaze filed a motion to dismiss the charges with prejudice. Finding that the county attorney's office "ha[d] no intention to refile this matter" and that "this matter was commenced almost four and one-half years ago and finality is appropriate under the circumstances," Judge Donfeld granted Glaze's motion on July 6, 1999.

¶ 5 Glaze filed this lawsuit against Larsen in December 2000. Arguing that the complaint was barred by the two-year limitations period in A.R.S. § 12–542, Larsen moved to dismiss the complaint pursuant to Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. The trial court concluded that the statute of limitations period had begun, at the very latest, on September 30, 1998, when this court filed its order finding that Glaze had raised a colorable claim for relief based on ineffective assistance of counsel.[1] Because we had filed our order two years before the date Glaze filed his complaint, the trial court dismissed the complaint. This appeal followed.

¶ 6 Glaze contends that the statute of limitations period on his claim did not begin until Judge Donfeld dismissed the criminal case with prejudice because, until that time, his "injury or damage [was] speculative, remote, or uncertain." The requirement in § 12–542 that a tort action "shall be commenced and prosecuted within two years after the cause of action accrues" applies to legal malpractice actions. *Kiley v. Jennings, Strouss & Salmon,* 187 Ariz. 136, 927 P.2d 796 (App.1996). "A claim for legal malpractice accrues when: (1) the plaintiff knows or reasonably should know of the attorney's negligent conduct; and (2) the plaintiff's damages are ascertainable, and not speculative or contingent." *Id.* at 139, 927 P.2d at 799. Put another way, "it is only when the litigation is terminated and the client's rights are 'fixed' that it can safely be said that the lawyer's misdeeds resulted in injury to the client." *Amfac Distrib. Corp. v. Miller,* 138 Ariz. 155, 157, 673 P.2d 795, 797 (App.) (*Amfac I*), *aff'd,* 138 Ariz. 152, 673 P.2d 792 (1983) (*Amfac II*).

¶ 7 As both parties note, the questions of when a plaintiff is deemed to know of his or her attorney's negligence and when the plaintiff's damages are regarded as ascertainable in the context of a criminal proceeding are issues of first impression in Arizona. Thus, both parties rely on case law from other jurisdictions to support their positions.

¶ 8 Citing *Silvers v. Brodeur,* 682 N.E.2d 811 (Ind.Ct.App.1997), and *Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900 (1994), Larsen urges us to follow the approach taken by states that allow a cause of action for legal malpractice to accrue prior to the "final resolution of the underlying criminal case." In *Silvers,* the plaintiff received a thirty-five-year sentence after his attorney advised him to plead guilty to murder and attempted murder. More than two years later, the plaintiff filed a complaint against his attorney with the State Bar of Indiana, alleging that counsel had negligently represented him. Approximately five years later, the plaintiff successfully petitioned for post-conviction relief based on ineffective assistance of counsel during the plea bargaining process. Following a trial, the plaintiff was convicted of criminal recklessness and released from custody because he had already

---

1. Even if we agreed that our order finding that Glaze had stated a colorable claim for ineffective assistance of counsel triggered the statute of limitations, Division One of this court has previously explained that the date we issue the mandate in a case is the date that fixes the completion of the appellate process. *See Joel Erik Thompson, Ltd. v. Holder,* 192 Ariz. 348, 965 P.2d 82 (App.1998). Thus, because our mandate was issued October 28, 1998, Glaze's filing the action in December 2000 still would have been untimely, even if the mandate had triggered the accrual of the malpractice claim.

served the maximum sentence. Approximately one year after his trial, the plaintiff sued his attorney for legal malpractice.

¶ 9 Affirming the trial court's grant of summary judgment in favor of the attorney and recognizing its state public policy favoring the use of the statute of limitations as a defense, the Indiana Court of Appeals held that a criminal defendant must commence a legal malpractice action against his or her attorney within two years of discovering the malpractice, even if the criminal proceeding is ongoing. The court noted that delaying the accrual of the malpractice claim until the criminal proceeding has terminated does not further the state's goals of prompt presentation of claims and notice to defendants.

¶ 10 Similarly, the Michigan Supreme Court in *Gebhardt* held that the plaintiff's cause of action for legal malpractice had accrued before the termination of the criminal case against her. There, a jury had convicted the plaintiff of abetting a rape. After the plaintiff dismissed her attorney, she moved for a new trial on the ground that her attorney had "failed ... to provide a substantial defense." 510 N.W.2d at 901. Finding there was insufficient evidence that plaintiff had an abettor, the trial court entered a judgment of acquittal. More than two years after she filed her motion for a new trial, the plaintiff sued her attorney for legal malpractice. The trial court dismissed that lawsuit as untimely, reasoning that the plaintiff had known about her attorney's malpractice when she terminated his services.

¶ 11 In affirming the trial court's ruling, the Michigan Supreme Court explained that having a claim accrue prior to the termination of the criminal proceeding "affords the opposing party a fair opportunity to defend, relieves the court system from dealing with 'stale' claims, and protects potential defendants from protracted fear of litigation." *Id.*

at 905. And, in rejecting the concern that a plaintiff's damages would be uncertain until the termination of the criminal proceeding, that court stated that "harm is established not by the finality of the damages, but by the occurrence of identifiable and appreciable loss." *Id.* at 904. The supreme court further noted that its approach was consistent with its statute providing that the limitations period for a legal malpractice action is two years from the last date the attorney represented the plaintiff or six months after the plaintiff discovers or should have discovered the malpractice.

¶ 12 Glaze urges us to reject these authorities and follow the approach of courts in states such as Alaska that hold that a cause of action for legal malpractice in the criminal context does not accrue until the criminal proceedings against the plaintiff are final and the plaintiff has been exonerated.[2] *See Shaw v. State,* 816 P.2d 1358 (Alaska 1991). Even though the plaintiff in *Shaw* sued his criminal defense attorney for legal malpractice approximately fifteen years after his conviction, the court held that his lawsuit was timely because he had filed it within two years of his exoneration. The Supreme Court of Alaska explained that tolling the limitations period until the criminal proceeding against the plaintiff has terminated and the plaintiff has been exonerated promotes judicial economy because many of the issues raised in the post-conviction proceeding will be raised in the legal malpractice action as well, and the doctrine of collateral estoppel prevents a plaintiff from relitigating frivolous issues. Additionally, the court noted, this approach provides a bright-line rule, recognizes that the merits of a claim on appeal or for post-conviction relief are uncertain until the claim has been decided, and decreases the likelihood that attorneys and clients will become adversaries during the criminal proceeding.

---

**2.** Other states that delay accrual of causes of action for legal malpractice during the pendency of criminal proceedings include Florida, Illinois, Kentucky, New York, Oregon, and Virginia. *See Steele v. Kehoe,* 747 So.2d 931 (Fla.1999); *Griffin v. Goldenhersh,* 323 Ill.App.3d 398, 257 Ill.Dec. 52, 752 N.E.2d 1232 (2001); *Stephens v. Denison,* 64 S.W.3d 297 (Ky.Ct.App.2001); *Britt v. Legal Aid Soc'y, Inc.,* 95 N.Y.2d 443, 718

N.Y.S.2d 264, 741 N.E.2d 109 (2000); *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556 (1993); *Adkins v. Dixon,* 253 Va. 275, 482 S.E.2d 797 (1997). *Cf. Day v. Zubel,* 112 Nev. 972, 922 P.2d 536 (1996) (statute of limitations period on plaintiff's federal civil rights cause of action based on public defender's representation during criminal proceeding did not begin until plaintiff's criminal proceedings terminated).

¶ 13 The approach Glaze advocates is more consistent with our rule requiring claims to be based on ascertainable damages, *see Kiley*, and with Arizona public policy. *See Manterola* (Arizona disfavors defense of statute of limitations). Indeed, as the court in *Shaw* explained, tolling the limitations period until the criminal proceeding has ended furthers the important goals mentioned in the preceding paragraph.[3] *Cf. Amfac I*, 138 Ariz. at 158, 673 P.2d at 798 ("[n]othing could be more destructive to the attorney-client relationship" than requiring a plaintiff to second-guess his or her attorney's actions or seek out other legal opinions). Moreover, the usual prejudice to the defendant caused by delay is less of a concern in cases involving legal malpractice that occurs during the course of litigation because the malpractice is usually recorded in court documents or transcripts. *Id.* And, as Division One of this court explained in *Amfac I*, tolling the limitations period for a legal malpractice action in this context gives the plaintiff the "peace of mind to allow the legal process to work fully and finally in hopes that his position will ultimately be vindicated and [the plaintiff] will not be forced to disrupt his relationship with his lawyer to preserve what he thinks may be a valid malpractice claim." 138 Ariz. at 159, 673 P.2d at 799.

¶ 14 At oral argument, however, Larsen urged us to follow Division One's decision in *Commercial Union Insurance Co. v. Lewis and Roca*, 183 Ariz. 250, 902 P.2d 1354 (App. 1995). In that case, an insurance company received a negligently drafted opinion letter from its attorneys in 1982. Based on that letter, the insurance company denied coverage to its insured, a construction company, for negligent construction of some townhouses. In 1987, the insurance company learned of its attorneys' negligence when the insured's trustee in bankruptcy sued it for breach of contract and bad faith refusal to settle. Following its settlement with the trustee several years later, the insurance company sued its attorneys for legal malpractice. Although Division One ultimately concluded that the insurance company's tolling agreement with its attorneys had preserved the timeliness of its cause of action, the court explained that the company's malpractice claim had accrued when the trial court denied its motion for summary judgment in the bad faith action; at that point, the company knew or should have known that its attorneys' negligent advice had caused it to incur legal fees in defending the bad faith action. Thus, the accrual date for its legal malpractice action was not deferred until it had finally determined the total amount of its damages in the bad faith action. But, because the legal malpractice alleged in *Commercial Union* did not occur during the course of litigation, the reasoning in that case does not affect the result here.

¶ 15 As the court in *Commercial Union* acknowledged, "the *Amfac* cases stand for the proposition that, in the context of litigation, attorney negligence is not actionable until the case in which the malpractice arose is finally resolved." 183 Ariz. at 255, 902 P.2d at 1359. In civil cases, this is so because the harm to the party aggrieved by the legal malpractice is not certain, fixed, or irreversible upon the trial court's entry of judgment. *Amfac II*. If the aggrieved party "is successful on appeal, his damages will be considerably lessened or possibly eliminated." *Id.* at 154 n. 2, 673 P.2d at 794 n. 2. Likewise, in criminal cases, the harm to the aggrieved party is uncertain until the termination of criminal proceedings because the criminal defendant is not harmed by his or her attorney's malpractice if the defendant is properly convicted after a new trial. *See Day v. Zubel*, 112 Nev. 972, 922 P.2d 536

---

3. As previously stated, Larsen represented Glaze at trial and on appeal; different counsel represented Glaze throughout his post-conviction proceeding. The dissent states that the concern expressed in *Amfac I* and *Amfac II*, that the attorney-client relationship may be strained by a pending malpractice action, does not exist in this case. This is so, the dissent maintains, because Larsen's representation of Glaze had ended before Glaze alleged that Larsen had been professionally negligent. Although the record reflects that Glaze's petition for review and his appeal were not simultaneously pending, in other cases, frequently the appeal and the petition for review proceed simultaneously. And often, as in this case, a criminal defendant's trial attorney also represents him or her on appeal. Thus, the dissent's observation would not be true in many cases.

(1996). Because the alleged legal malpractice here occurred during litigation, the *Amfac* cases require us to find that Glaze's malpractice claim did not accrue until the criminal proceedings against him were resolved.

¶ 16 Accordingly, we conclude that Glaze's claim for legal malpractice accrued on the date Judge Donfeld dismissed the criminal charge against him with prejudice. *See Day.* Glaze's damages were uncertain before that date because he could have been convicted after retrial even had the jury received an instruction on lack of sexual motivation. Because Glaze commenced his legal malpractice action within two years of the date his claim accrued, the trial court erred in granting Larsen's motion to dismiss the complaint. *See* § 12–542.

¶ 17 The judgment is reversed, and the case is remanded for further proceedings consistent with this decision.

PELANDER, Judge, specially concurring in the result.

¶ 18 I respectfully concur in the result only because *Amfac I* and *Amfac II*, which Larsen fails to squarely address, appear to constrain me to do so. In *Amfac I*, Division One of this court held that "a cause of action for legal malpractice occurring in the course of litigation accrues when the plaintiff knew or should reasonably have known of the malpractice and when the plaintiff's damages are certain and not contingent upon the outcome of an appeal." 138 Ariz. at 156, 673 P.2d at 796. The court further concluded that, when "there has been no final adjudication of the client's case in which the malpractice allegedly occurred, the element of injury or damage remains speculative and remote, thereby making premature the cause of action for professional negligence." *Id.* And, as noted in ¶ 6, *supra,* the court in *Amfac I* also stated: "Generally, it is only when the litigation is terminated and the client's rights are 'fixed' that it can safely be said that the

lawyer's misdeeds resulted in injury to the client." 138 Ariz. at 157, 673 P.2d at 797.

¶ 19 In *Amfac II,* our supreme court expressly "agree[d] with and approve[d] the opinion of the Court of Appeals" in *Amfac I.* 138 Ariz. at 153, 673 P.2d at 793. Although the court noted that "the plaintiff[ ] must have sustained *some* injury or damaging effect from the [attorney] malpractice" in order for the cause of action to accrue for statute of limitations purposes, *id.* (emphasis added), it then stated that "the injury or damaging effect on the unsuccessful party is not ascertainable until the appellate process is completed or is waived by a failure to appeal." *Id.* at 154, 673 P.2d at 794. And the court rejected the notion that "an unsuccessful party's damages are certain, fixed, or irreversible" absent a " 'final adjudication of the client's case in which the malpractice allegedly occurred.' " *Id.* at 154 n. 2, 673 P.2d at 794 n. 2, *quoting Amfac I,* 138 Ariz. at 156, 673 P.2d at 796.[4]

¶ 20 In *Amfac I* and *II,* the underlying litigation in which the attorney malpractice allegedly occurred was a civil action, whereas the underlying case here was a criminal proceeding. *See Taylor v. State Farm Mut. Auto. Ins. Co.,* 185 Ariz. 174, 178, 913 P.2d 1092, 1096 (1996) ("In *Amfac,* we considered the accrual date for a cause of action for legal malpractice that occurred during the course of *civil* litigation.") (emphasis added). It is not readily apparent, however, that such a distinction is either dispositive or even relevant to the analysis and resolution of the statute of limitations issue here. Indeed, Larsen does not attempt to distinguish *Amfac I* and *II* on that or any other basis. Accordingly, this court, of course, is bound by and must follow *Amfac I* and *II. See McKay v. Industrial Comm'n,* 103 Ariz. 191, 438 P.2d 757 (1968); *Myers v. Reeb,* 190 Ariz. 341, 342, 947 P.2d 915, 916 (App.1997).

¶ 21 The dissent seeks to avoid the effect of *Amfac I* and *II* by characterizing an underlying criminal case and a post-conviction

---

4. Our supreme court has not retreated from, but rather, has embraced, the reasoning and result in *Amfac II. See Taylor v. State Farm Mut. Auto. Ins. Co.,* 185 Ariz. 174, 179, 913 P.2d 1092, 1097 (1996) (holding, pursuant to "final judgment accrual rule," that "a third-party bad faith refusal to settle claim does not accrue until such time as the underlying judgment against the insured becomes final or non-appealable").

proceeding pursuant to Rule 32 as "distinct," implicitly viewing them as entirely different cases. *See* ¶ 33, *infra.* But a post-conviction proceeding pursuant to Rule 32 "is part of the original criminal action and not a separate action." Ariz. R.Crim. P. 32.3, 17 A.R.S.; *see also Moreno v. Gonzalez,* 192 Ariz. 131, ¶ 16, 962 P.2d 205, ¶ 16 (1998). Moreover, convicted defendants must file any notice of and petition for post-conviction relief "with the court in which the conviction occurred," and "[t]he notice shall bear the caption of the original criminal action or actions to which it pertains." Ariz. R.Crim. P. 32.4(a). For that reason, the superior court case number for Glaze's underlying criminal case and his subsequent Rule 32 proceeding was identical.

¶ 22 I also note that Rule 32 is the only procedural mechanism available to convicted defendants who have entered into a plea agreement or who wish to present certain claims for relief in the trial court and, if relief is denied, to seek appellate review of such claims. *See* A.R.S. § 13–4033(B); Ariz. R.Crim. P. 17.1(e), 16A A.R.S.; *Montgomery v. Sheldon,* 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995). For example, if a defendant seeks relief from a conviction or sentence based on grounds of ineffectiveness of counsel; evidence discovered only after expiration of the time for filing a motion to vacate judgment under Rule 24.2(a), Ariz. R.Crim. P., 17 A.R.S.; or a significant change in the law, he or she must do so through Rule 32 proceedings. *See* Ariz. R.Crim. P. 32.1(a), (e), (g); *see also State v. Spreitz,* 202 Ariz. 1, 39 P.3d 525 (2002). Thus, Rule 32 proceedings are not only directly related to, but are also part of, the underlying criminal case and, indeed, are ancillary to direct appellate review.

¶ 23 In civil litigation, a motion for relief from judgment pursuant to Rule 60(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, is analogous to a Rule 32 petition for post-conviction relief in a criminal case. Despite the entry of final judgment in a civil case, the case would not be considered to be over or final while a timely filed motion for relief from judgment under Rule 60(c) is still pending. Similarly, in my view, the dissent incorrectly states that

"a criminal case terminates at the conclusion of the appeal process," notwithstanding the pendency of a Rule 32 proceeding. *See* ¶ 34, *infra.*

¶ 24 Although I agree with much of the dissent's reasoning and actually prefer its approach, the current state of the law apparently precludes it. I write separately only to express my concerns with adopting the "bright-line rule" apparently established in *Amfac I* and *II* for legal malpractice that occurs during civil litigation and now embracing it for attorney malpractice actions arising from criminal litigation. *See* ¶ 12, *supra.* In my view, such a rule in this context not only deviates from Arizona's traditional discovery rule jurisprudence, but also undermines two fundamental principles on which the statute of limitations defense is based: timely notice to the defendant and avoidance of stale claims. That is particularly so when the alleged attorney malpractice occurs in criminal proceedings, final resolution of which may take many years. *See Coscia v. McKenna & Cuneo,* 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670, 680 (2001) (noting as "particular concern" in this context that "years, even decades, may elapse before the wrongfully convicted criminal defendant obtains postconviction relief"); *see also Silvers,* 682 N.E.2d at 817–18.

¶ 25 As this court recently stated:
The limitations period under § 12–542 "begins to run upon accrual," *Doe v. Roe,* 191 Ariz. 313, ¶ 40, 955 P.2d 951, ¶ 40 (1998), which requires not only an alleged "wrong" but also injury. *Id.* at ¶ 32, 955 P.2d at ¶ 32. *See also Myers v. Wood,* 174 Ariz. 434, 435, 850 P.2d 672, 673 (App.1992). "In other words, 'the limitations period does not commence until [an] actionable [wrong] exists, that is, [a tort] that results in appreciable, non-speculative harm to the [plaintiff].'" *CDT,* [*Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.,*] 198 Ariz. 173, ¶ 7, 7 P.3d 979, ¶ 7 [ (App.2000) ], *quoting Commercial Union Ins. Co. v. Lewis and Roca,* 183 Ariz. 250, 254, 902 P.2d 1354, 1358 (App.1995). In addition, under the common law "discovery rule," "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should

know the facts underlying the cause." *Doe*, 191 Ariz. 313, ¶ 29, 955 P.2d 951, ¶ 29. *Manterola*, 200 Ariz. 572, ¶ 10, 30 P.3d 639, ¶ 10 (first four alterations in original); *see also Walk v. Ring*, 202 Ariz. 310, ¶¶ 14–26, 44 P.3d 990, ¶¶ 14–26 (2002); *Montaño v. Browning*, 202 Ariz. 544, ¶ 10, 48 P.3d 494, ¶ 10 (App.2002).

¶ 26 Glaze filed his petition for post-conviction relief in April 1997, alleging that Larsen had been ineffective at trial. Therefore, at that point, Glaze apparently "knew or should have known facts that would have put a reasonable person on notice to investigate whether [any] injury [he had sustained] had been wrongfully inflicted." *Walk*, 202 Ariz. 310, ¶ 43, 44 P.3d 990, ¶ 43. In this court's September 1998 order, we recognized Glaze's ineffective assistance of counsel claim as colorable, therefore entitling Glaze to an evidentiary hearing. Based on those facts, Glaze properly conceded at oral argument in this court that his filing this action in December 2000 had occurred more than two years after he had actual, not merely constructive, knowledge of Larsen's alleged wrongdoing, that is, "that a wrong might have occurred." *Id.* at ¶ 25, 44 P.3d 990; *see also Coscia*, 108 Cal.Rptr.2d.471, 25 P.3d at 679 ("The wrongful act or omission giving rise to a criminal malpractice action necessarily occurred during the course of the attorney's representation of the client—not at some time thereafter, when the client obtained postconviction relief."). Thus, the determinative issue here should be whether Glaze knew or should have known, more than two years before he filed this action, that he had "sustained some injury or damaging effect from [Larsen's] malpractice." *Amfac II*, 138 Ariz. at 153, 673 P.2d at 793.

¶ 27 Contrary to the apparent implication of *Amfac I* and *II* and contrary to the principal decision's conclusion, resolution of that issue should not necessarily hinge on final disposition of the malpractice plaintiff's underlying criminal case. After being convicted in November 1995 of sexual abuse, Glaze was placed on probation for one year in February 1996. This court then affirmed the conviction and probationary term in January 1997, apparently with no further appellate relief having been sought or obtained. In my view, those events clearly establish Glaze's actual knowledge that he had sustained " 'appreciable, non-speculative harm' " as a result of Larsen's alleged malpractice. *CDT*, 198 Ariz. 173, ¶ 7, 7 P.3d 979, ¶ 7, *quoting Commercial Union*, 183 Ariz. at 254, 902 P.2d at 1358. As the California Supreme Court recently noted in *Coscia*:

> [W]e decline to adopt the legal fiction that an innocent person convicted of a crime suffered no actual injury until he or she was exonerated through postconviction relief. As the Court of Appeal herein observed, "a criminal conviction—with its attendant financial and social ramifications, incarceration, probation, fines or other damaging consequences—would constitute appreciable harm, or 'actual injury' " within the meaning of [the applicable California statute of limitations].

108 Cal.Rptr.2d 471, 25 P.3d at 680, *quoting Coscia v. McKenna & Cuneo, L.L.P.*, 95 Cal. Rptr.2d 368, 374 (2000).

¶ 28 After recognizing the different approaches courts have taken in this area, the court in *Coscia* rejected the "bright-line rule" that would automatically delay accrual of the cause of action in cases such as this until final resolution of the malpractice claimant's underlying criminal proceedings.[5] Rather, the court adopted a "two-track approach," whereby the attorney malpractice action accrues when the claimant has actual or constructive knowledge of wrongdoing and damage, but the trial court may then "stay the malpractice action during the period in which such a plaintiff timely and diligently pursues postconviction remedies." *Coscia*, 108 Cal. Rptr.2d 471, 25 P.3d at 680.[6] That approach,

---

5. I note that the manner in which Glaze's underlying criminal case was dismissed with prejudice does not equate to his exoneration. In addition, any concern about preserving the attorney-client relationship is not a factor here, *see* ¶ 13, *supra*, inasmuch as Glaze had new counsel after seeking post-conviction relief based on Larsen's alleged ineffectiveness at trial.

6. In addition to the Indiana and Michigan cases that the principal decision discusses, *see* ¶¶ 8–11, *supra*, several other courts have rejected the "bright-line rule" that would indefinitely delay

the California court concluded, "is most consistent with ... the interests of fairness to both plaintiffs and defendants in criminal malpractice actions," in that "courts can ensure that the plaintiff's claim will not be barred prematurely by the statute of limitations" but "at the same time will protect the interest of defendants in attorney malpractice actions in receiving timely notice and avoiding stale claims." *Id.* Were it not for the controlling precedent in *Amfac I* and *II,* I would subscribe to that approach.

· BRAMMER, Presiding Judge, dissenting.

¶ 29 I write separately to respectfully express my disagreement with the result the principal decision reaches. Although I agree with much of the analysis in Judge Pelander's concurrence, it does not go far enough to reach the result I conclude is appropriate.

¶ 30 When Glaze filed his petition for post-conviction relief on April 23, 1997, pursuant to Rule 32, he "knew of the malpractice" that, pursuant to *Amfac I* and II, begins the limitations period. Indeed, that conduct was the basis of his Rule 32 petition for post-conviction relief. It is not important that he, or one in his position, may later be unsuccessful in proving his assertion, although in this instance, Glaze was granted relief on that basis. Rather, it is important only that he knew of the conduct and whose conduct it was.

¶ 31 Although I have some serious question about the *Amfac II* court's reasoning on when damage resulting from professional negligence occurs, *see Coscia,* there can be little debate about the central points the court made.[7] I assume for purposes of this analysis that the *Amfac I* and *II* rule, established within the context of civil litigation, also applies in the context of a criminal prosecution.

¶ 32 The first point of the *Amfac* cases was that no legal malpractice action may be brought based on conduct arising in a civil litigation context until the case in which the conduct occurred has ended. The second point was that the action had to be brought within two years after the case terminated, unless the malpractice had not yet been discovered, and then the action must be filed within two years of the date the malpractice became known or should have become known through the exercise of reasonable diligence. The last principal point is that the plaintiff must have suffered appreciable and nonspeculative harm from the professional negligence.

¶ 33 In this case, the proper analysis would be to apply the *Amfac I* and *II* principles to the facts and determine when the case in which Larsen's alleged malpractice occurred ended. The mandate for our decision upholding Glaze's conviction was issued on February 28, 1997. Although Glaze's Rule 32 petition, filed nearly two months later, related to this conviction, the two matters are distinct.

¶ 34 A request for post-conviction relief under Rule 32 may be instituted whether or not an appeal of the criminal conviction has been or may be filed and can continue on its own without reference to an appeal. Should relief be denied in the superior court, the petitioner may request appellate review, again, irrespective of the status of any appeal. Post-conviction relief proceedings may, and in many cases do, occur while an appeal of the conviction is pending. Indeed, many claims relating to a criminal case may be raised only by a petition for post-conviction relief, *see* Rule 32.1, and not by appeal. *See, e.g., Spreitz* (ineffective assistance of counsel claims must be raised in post-conviction proceedings). These factors combine to compel

accrual of causes of action such as this until the defendant's ultimate exoneration or final resolution of his or her criminal proceedings. *See, e.g., Berringer v. Steele,* 133 Md.App. 442, 758 A.2d 574, 604 (2000); *Seevers v. Potter,* 248 Neb. 621, 537 N.W.2d 505, 510–11 (1995); *Duncan v. Campbell,* 123 N.M. 181, 936 P.2d 863, 867–69 (1997); *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 115 n. 3 (1993).

7. I also have difficulty accepting the principal decision's suggestion in ¶ 15, relying on *Amfac I* and *II,* that no irreversible harm occurs until the case is ended. In my view, the expense, anxiety, and loss of personal and professional time occasioned by attorney negligence that results in extra and ordinarily unnecessary court proceedings, including trials and appeals, most certainly constitute both fixed and irreversible harm, notwithstanding the ultimate conclusion of the proceedings.

**408**

a conclusion that a criminal case terminates at the conclusion of the appeal process—that is, the date our mandate issues, *see Joel Erik Thompson*—for purposes of determining when a cause of action for perceived legal malpractice occurring during that case accrues.

¶ 35 Next, the policy concern noted in *Amfac I* and approved in *Amfac II*, that the attorney-client relationship not be strained by the client's filing, during the pendency of the litigation, a malpractice action against the attorney, is not present here. Larsen's representation of Glaze in the criminal case had already ended when Glaze accused him in the Rule 32 proceeding of professional negligence in the criminal case. And the allegation was made by separate counsel in that separate proceeding.

¶ 36 Finally, because Glaze had been convicted in the criminal prosecution, a conviction we upheld on appeal, I do not think it can be argued that he had not suffered appreciable and nonspeculative harm. Accordingly, when Glaze filed his Rule 32 petition on April 23, 1997, not only was the criminal case in which he had suffered the harm as well as his representation by the attorney he claimed had committed malpractice at an end, but he knew who had caused him the harm and he had identified the conduct he believed to be negligent. Therefore, all the *Amfac I* and *II* elements were present on April 23, 1997, considerably more than two years before December 2000, when Glaze filed his action against Larsen, and well outside the limitations period prescribed by § 12–542.

¶ 37 Because "[a]ll legal malpractice plaintiff-clients must sue, and all defendant-attorneys must be sued, within two years of the date the client is injured by the alleged malpractice," I conclude that Glaze filed his legal malpractice action against Larsen more than two years after it had accrued. *Amfac II*, 138 Ariz. at 154, 673 P.2d at 794. For that reason it is barred by the application of § 12–542. Accordingly, I respectfully dissent.