**James L. NOSKE, Appellant,**

v.

**Joseph FRIEDBERG, et al., Respondents.**

**No. C7–02–1073.**

Court of Appeals of Minnesota.

Feb. 5, 2003.

Lawrence H. Crosby, Jay D. Olson, Crosby and Associates, St. Paul, MN, for appellant.

William L. Davidson, Paul C. Peterson, Timothy J. O'Connor, Lind, Jensen, Sullivan & Peterson, Minneapolis, MN, for respondents.

Considered and decided by PETERSON, Presiding Judge, WILLIS, Judge, and MULALLY, Judge.*

## OPINION

PETERSON, Judge.

In January 1999, a federal district court granted appellant James L. Noske's petition for a writ of habeas corpus and vacated Noske's 1990 assault conviction,·based on the court's conclusion that Noske had been denied his Sixth Amendment right to the effective assistance of trial counsel. Noske then brought a legal-malpractice action against respondent Joseph S. Friedberg, who was Noske's defense attorney during the 1990 assault prosecution, and Friedberg's law firm, respondent Joseph S. Friedberg, Chartered. Upon respondents' motion, the district court concluded that Noske's claims were barred by the statute of limitations and dismissed Noske's action. We reverse and remand.

## FACTS

In August 1990, Noske was convicted of second-degree assault. He petitioned for postconviction relief, claiming that Friedberg provided ineffective assistance at trial. The district court denied the petition, and Noske appealed from his conviction and from the denial of postconviction relief. This court affirmed the district court in all respects, and the supreme court denied further review. *Noske v. State*, No. CO–91–2486, 1992 WL 365990 (Minn.App. Dec.15, 1992), *review denied* (Minn. Jan. 28, 1993).

On May 25, 1993, Noske filed a petition for a writ of habeas corpus in federal district court seeking reversal of his assault conviction and relief from supervised release on the bases that he was denied due process of law by the trial court's failure to instruct the jury as to self-defense and that he was denied effective assistance of counsel. In January 1999, the federal district court found that "contrary to the legal conclusion of the state court, [Noske] was denied his Sixth Amendment right to effective assistance of counsel and was prejudiced thereby." *Noske v. Stender*, No. 4–93–518, slip op. at 22 (D.Minn. Jan. 8, 1999). Therefore, the federal court concluded, Noske was subject to custody in violation of the United States Constitution and entitled to federal habeas relief. *Id.* The court granted Noske's petition for a writ of habeas corpus, vacated his 1990 assault conviction, and ordered that Noske may be retried on the assault charge within 90 days. *Id.* at 23. The state declined to retry Noske and did not appeal the order granting habeas relief.

In September 2001, Noske served respondents with a summons and complaint alleging legal malpractice. Noske claimed that Friedberg's negligent acts caused Noske to be convicted of second-degree assault and incarcerated, prevented him from obtaining a license to practice law in Minnesota, and increased his sentence in a federal tax case. Noske also alleged breach of contract and misrepresentation.

Pursuant to Minn. R. Civ. P. 12.02, respondents moved to dismiss for failure to state a claim upon which relief can be granted, arguing that Noske's claims accrued when Noske was convicted in 1990, and therefore, they were barred by the statute of limitations. The district court granted the motion and dismissed Noske's claims.

## ISSUE

Did Noske's legal-malpractice action accrue when he was convicted?

## ANALYSIS

The construction and applicability of statutes of limitations are questions of law

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const.art. VI, § 10.

reviewed de novo. *Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn.1998).

"The statute of limitations for a legal malpractice action is six years." *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn.1999) (citing Minn. Stat. § 541.05, subd. 1(5)). A statutory limitation period begins to run when "the cause of action accrues." Minn.Stat. § 541.01 (2002). A cause of action accrues when all of its elements exist to the extent that the claim could withstand a motion to dismiss for failure to state a claim upon which relief can be granted. *Bonhiver v. Graff*, 311 Minn. 111, 116–17, 248 N.W.2d 291, 296 (1976).

> A claim is sufficient against a motion to dismiss * * * if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded. To state it another way, under this rule a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded.

*N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963) (citation omitted). In the context of a legal-malpractice action, the supreme court has also stated, "A cause of action survives a motion to dismiss so long as 'some' damage has occurred as a result of the alleged malpractice." *Herrmann*, 590 N.W.2d at 643 (citations omitted).

The district court determined that because a legal-malpractice action can survive a motion to dismiss when some damage has occurred as a result of the alleged malpractice, and a cause of action accrues when the claim can survive a motion to dismiss, Noske's legal-malpractice action accrued when Noske suffered some damage. Therefore, the district court concluded, because the injuries that Noske alleged

he suffered as a result of Friedberg's malpractice began when Noske was convicted in 1990, 11 years before he initiated his lawsuit, Noske's action was barred by the six-year statute of limitations.

Noske argues that although Friedberg's alleged malpractice occurred at his trial in 1990 and the damages that he alleged he suffered as a result of the malpractice included his conviction and incarceration in 1990, his malpractice action could not have survived a motion to dismiss until he obtained habeas corpus relief in 1999. Noske contends that he had no legally cognizable harm or damages before the federal court granted his petition for a writ of habeas corpus and vacated his conviction.

No Minnesota appellate court opinion has addressed whether a person who has been convicted of a crime and incarcerated has suffered legally cognizable harm for purposes of maintaining a legal-malpractice action against the person's criminal-defense attorney. In making its decision, the district court could only rely on opinions in cases that did not involve allegations that a defendant in a criminal proceeding was convicted as a result of defense counsel's legal malpractice. Applying those precedents to the facts of this case leads to the conclusion that the district court reached if, at the moment Noske was convicted, he suffered damage that would sustain a legal-malpractice action. Although we do not disagree with the district court's determination that when Noske was convicted in 1990, he suffered some harm, we conclude that until Noske's conviction was vacated in 1999, it was a legal conviction and, therefore, should not be recognized as damage that would sustain a cause of action for legal malpractice.

■ To prevail in a legal-malpractice action, a plaintiff must prove by a fair preponderance of the evidence (a) the existence of an attorney-client relationship; (b) acts amounting to negligence or breach of contract; (c) that such acts proximately caused the plaintiff's damages; and (d) that but for the attorney's conduct, the plaintiff would have been successful in the underlying action. *Blue Water Corp. v. O'Toole,* 336 N.W.2d 279, 281 (Minn.1983) (stating legal-malpractice elements); *Wick v. Widdell,* 276 Minn. 51, 53–54, 149 N.W.2d 20, 22 (1967) (stating burden of proof for civil actions). Failure to prove any one of these elements defeats the plaintiff's case. *Blue Water Corp.,* 336 N.W.2d at 282. This means that to survive a motion to dismiss, it must be possible for Noske to produce evidence that proves each of these elements.

To prove elements (c) and (d) in his malpractice action, Noske must show that Friedberg's negligent acts caused him to be convicted and sent to prison and that but for Friedberg's acts, he would not have been convicted. But from the moment when Noske was convicted until the moment when his conviction was vacated, his conviction was, in the eyes of the law, a legal conviction. Therefore, to prove all of the elements of his legal-malpractice action before his conviction was vacated, Noske would have to show that his legal conviction would not have occurred but for Friedberg's negligent acts. But allowing Noske to prove that although his conviction is legal, it is, nevertheless, wrongful because it was caused by Friedberg's negligence simultaneously treats the conviction as both legal and wrongful.

This inconsistency can be avoided, however, by requiring a convicted defendant to obtain relief from a conviction before bringing a cause of action for legal malpractice that is based on a claim that defense counsel's negligent acts were the proximate cause of the conviction. Unlike an unsuccessful civil litigant, a convicted defendant may seek a new trial on the ground of ineffective assistance of counsel in a direct appeal from the judgment of conviction, in a postconviction proceeding pursuant to Minn.Stat. §§ 590.01–.06 (2002), or in a federal habeas corpus proceeding. To obtain a new trial on the ground of ineffective assistance of counsel in either a postconviction proceeding or in a direct appeal, a

> defendant must affirmatively prove that his counsel's representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Gates v. State,* 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). This is also the standard that the federal district court applied in granting Noske's petition for writ of habeas corpus and vacating his 1990 assault conviction. *Noske v. Stender,* No. 4–93–518, slip op. at 12, 20–21 (D.Minn. Jan. 8, 1999).

If a convicted defendant meets this standard, the conviction will be invalidated, and it will not be necessary to prove in a later legal-malpractice action that a legal conviction would not have occurred but for the negligent acts of counsel. Conversely, if a convicted defendant cannot meet this standard, the conviction will remain in effect. But a convicted defendant who cannot meet the standard of proving that there is a reasonable probability that, but for counsel's unprofessional errors, there would not have been a conviction, also

cannot meet the higher burden of proving by a fair preponderance of the evidence in a later malpractice action that but for counsel's negligent conduct, there would not have been a conviction. *See* John W. Strong, et al., *McCormick on Evidence* § 339, at 422 (5th ed.1999) (most acceptable meaning of proof by a preponderance is proof that leads jury to find that existence of the contested fact is more probable than its nonexistence); *see also* 4 *Minnesota Practice*, CIVJIG 14.15 (1999) (greater weight of the evidence "means that all of the evidence, regardless of which party produced it, must lead you to believe that the claim is more likely true than not true"). If it is not reasonably probable that but for counsel's errors, a conviction would not have occurred, it cannot be more probable than not that, but for counsel's errors, the conviction would not have occurred.

Because it is inconsistent to simultaneously treat an existent conviction as both legal and wrongful, and because there are existing procedures that permit a convicted defendant to obtain relief from a conviction on the ground of ineffective assistance of counsel, we hold that a cause of action for legal malpractice that is based on a claim that counsel's acts were the proximate cause of the plaintiff's criminal conviction accrues, and the statute of limitations begins to run, when the plaintiff obtains relief from the conviction.

Our holding is consistent with decisions in other jurisdictions that have considered whether appellate or postconviction relief from a conviction should be a prerequisite to maintaining a legal-malpractice action arising out of a criminal proceeding. *See, e.g., Shaw v. State, Dep't of Admin.*, 816 P.2d 1358, 1361–62 (Alaska 1991); *Glaze v. Larsen*, 203 Ariz. 399, 55 P.3d 93, 98 (Ct. App.2002); *Steele v. Kehoe*, 747 So.2d 931, 933 (Fla.1999); *Morgano v. Smith*, 110 Nev. 1025, 879 P.2d 735, 737 (1994); *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556, 561–62 (1993); *Falkner v. Foshaug*, 108 Wash.App. 113, 29 P.3d 771, 773 (2001).

In *Steele v. Kehoe*, 747 So.2d at 933, the Florida Supreme Court succinctly stated several policy arguments that are the bases for these decisions:

> (1) without obtaining relief from the conviction or sentence, the criminal defendant's own actions must be presumed to be the proximate cause of the injury; (2) monetary remedies are inadequate to redress the harm to incarcerated criminal defendants; (3) appellate, postconviction, and habeas corpus remedies are available to address ineffective assistance of counsel; (4) requiring appellate or postconviction relief prerequisite to a malpractice claim will preserve judicial economy by avoiding the relitigation of supposedly settled matters; and (5) relief from the conviction or sentence provides a bright line for determining when the statute of limitations runs on the malpractice action.

These policy arguments provide additional support for our holding.

We acknowledge that some courts that have considered this statute-of-limitations issue have reached a conclusion that is different from ours. *See, e.g., Settle v. Fluker*, 978 F.2d 1063, 1064 (8th Cir.1992) (interpreting Missouri law); *Gebhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900, 904–05 (1994); *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368, 375 (2000); *Duncan v. Campbell*, 123 N.M. 181, 936 P.2d 863, 868–69 (App.1997). But for the reasons that we have already stated, we are not persuaded by these decisions.

Citing *Gebhardt v. O'Rourke*, respondents argue that a two-track procedure for handling a legal-malpractice action that arises out of a criminal proceeding is a

better course than requiring relief from the conviction as a prerequisite for a legal-malpractice action because the two-track procedure recognizes the significance of the statute of limitations and addresses "the interplay between malpractice claims against criminal defense attorneys and the client's pursuit of postconviction relief."

In *Gebhardt*, the Michigan Supreme Court stated the policies underlying the statute of limitations:

> The statute of limitations affords the opposing party a fair opportunity to defend, relieves the court system from dealing with "stale" claims, and protects potential defendants from protracted fear of litigation.

510 N.W.2d at 905.

The court then explained that the two-track approach that it was adopting,

> recognizes that a criminal defendant who has initiated postconviction relief proceedings should have knowledge sufficient to have discovered his claim against his initial defense attorney for statute of limitation purposes. In order to put the defense attorney on notice that he will have to defend against a malpractice claim, and thereby honor the policies underlying the statute of limitations, the criminal defendant must file his malpractice complaint within six months of discovering the existence of the claim, or within two years of his attorney's last day of service in the matter in which the alleged negligence occurred.
>
> With his claim preserved, he can and should seek a stay in the civil suit until the criminal case is resolved. The trial court handling the civil suit would have discretion regarding whether the stay would continue until judgment in the criminal matter is final or, if after the initial judgment on postconviction relief, justice would permit going forward with

the civil suit while the appeal process in the criminal matter continues until final determination.

*Id.* at 907.

This two-track approach does strike a balance between relevant conflicting policy goals. But in *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401 (Minn.2000), the Minnesota Supreme Court considered and rejected a similar procedure for addressing a similar policy conflict that arose in an action seeking underinsured motorist (UIM) benefits.

In *Oanes*, the plaintiffs sought to recover UIM benefits under their policy more than six years after the automobile accident that caused their injuries. *Id.* at 402. Before *Oanes*, UIM claims accrued at the time of the accident, but could not be recovered until all claims against the tortfeasor had been exhausted by settlement or judgment. *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 858 (Minn. 1993) (holding settlement or judgment against tortfeasor is condition precedent to bringing UIM claim); *O'Neill v. Ill. Farmers Inc. Co.*, 381 N.W.2d 439, 439 (Minn. 1986) (holding UIM claims accrued on accident date). Recognizing that there was no guarantee that the Nordstrom condition precedent would occur before the six-year statute of limitations had run, the supreme court adopted a rule designating the date of settlement or judgment against the tortfeasor as the accrual date for UIM claims. *Oanes*, 617 N.W.2d at 407. The supreme court rejected an alternative approach that would require the insured to commence a UIM action within the six-year statute of limitations and then request that the trial be delayed until the underlying tort action was either settled or litigated to completion. *Id.* at 405–06. The supreme court concluded that although this solution maintained the viability of both the rule that a UIM claim accrues on the date of the

accident and the rule that a settlement or judgment against the tortfeasor is a condition precedent to bringing a UIM claim, it did so at a cost. *Id.* at 405.

> That cost is the invitation to bring litigation, including the attendant burden and expense placed on finite judicial resources as well as on the parties, for cases in which no justiciable controversy currently exists or may ever exist. We decline to extend such an invitation.

*Id.* at 405–06.

Following the two-track approach adopted in *Gebhardt* would impose a similar cost because it would require every convicted defendant who seeks relief from a conviction based on an ineffective-assistance-of-counsel claim to also file a legal-malpractice action or risk later having the action be time-barred. We see no basis for concluding that this cost is unacceptable with respect to a UIM claim but acceptable with respect to a legal-malpractice claim.

Noske also argues that he would have been collaterally estopped from bringing a malpractice claim before he obtained relief from his conviction. But Noske did not attempt to bring an action before he obtained relief from his conviction. Therefore, his collateral-estoppel argument is hypothetical, and the district court properly declined to address it. *See State v. Fisher,* 588 N.W.2d 515, 517 (Minn.App.1999) (courts need not address hypothetical arguments), *review denied* (Minn. Apr. 20, 1999).

## DECISION

Noske's cause of action for legal malpractice accrued, and the statute of limitations began to run, when Noske obtained relief from his conviction in 1999. Therefore, the cause of action is not barred by the statute of limitations, and the district court erred in dismissing the cause of action.

**Reversed and remanded.**