SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JAMES R. GLAZE, JR., a married man, | ) Arizona Supreme Court ) No. CV-02-0375-PR ) |
| Plaintiff/Appellant, | ) Court of Appeals ) Division Two ) No. 2 CA-CV 2001-0196 |
| v. | ) |
| ERIC A. LARSEN, | ) Pima County Superior ) Court |
| Defendant/Appellee. | ) No. C-20006235 ) |
| _____ | ) **O P I N I O N** |

Appeal from the Superior Court of Pima County
The Honorable Jane L. Eikleberry, Judge

**REVERSED AND REMANDED**

_____

Opinion of the Court of Appeals, Division Two
203 Ariz. 399, 55 P.3d 93

**VACATED**

_____

THE KERLEY FIRM, P.C.                                          Sierra Vista
      By:  James K. Kerley
Attorney for Appellant

CHANDLER, TULLAR, UDALL & REDHAIR, LLP                              Tucson
      By:  Peter Akmajian
Attorney for Appellee

ENGELMAN BERGER, P.C.                                             Phoenix
      By:  William H. Anger
Attorney for Amicus Curiae
Arizona Association of Defense Counsel

_____

**H U R W I T Z,** Justice

¶1      This case requires us to decide when a cause of action accrues for legal malpractice occurring in the course of criminal litigation.  We granted review because the issue is one of first impression in Arizona and is of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, Arizona Rule of Civil Appellate Procedure 23, and Arizona Revised Statutes ("A.R.S.") § 12-120.24 (2003).

**I.**

¶2      James R. Glaze was convicted in superior court of one count of sexual abuse and was sentenced to a one-year term of probation.   Eric A. Larsen represented Glaze in the trial proceedings.   Larsen also represented Glaze on his direct appeal, in which the court of appeals affirmed the conviction. *State v. Glaze*, 2 CA-CR 96-0145 (Ariz. App. Jan. 14, 1997) (mem. decision).

¶3      Glaze, no longer represented by Larsen, then filed a petition in the superior court under Arizona Rule of Criminal Procedure 32 for post-conviction relief.  The Rule 32 petition alleged that Larsen had provided ineffective assistance of counsel by failing to request a jury instruction regarding "lack of sexual motivation."   The superior court dismissed the petition.   The court of appeals granted Glaze's petition for review, but initially denied relief.  *State v. Glaze*, 2 CA-CR

2

97-0400-PR (Ariz. App. June 23, 1998) (mem. decision). On September 30, 1998, however, the court of appeals granted a motion for reconsideration and held that Glaze had stated a "colorable claim of ineffective assistance of counsel." The case was remanded to superior court for an evidentiary hearing.

¶4        On remand, the superior court found that Larsen had been ineffective in failing to request the jury instruction and granted Glaze a new trial. Glaze then filed a motion to dismiss the charges with prejudice. The superior court granted the motion to dismiss on July 6, 1999.

¶5        On December 14, 2000, Glaze filed suit against Larsen, alleging that Larsen's negligence had caused the criminal conviction. The superior court granted Larsen's motion to dismiss, holding that Glaze's claim was barred by the two-year statute of limitations in A.R.S. § 12-542 (2003), which provides that negligence actions "shall be commenced and prosecuted within two years after the cause of action accrues." The trial court found that the cause of action had accrued on September 30, 1998, the date the court of appeals held that Glaze had a colorable claim for ineffective assistance of counsel.

¶6        The court of appeals reversed. *Glaze v. Larsen*, 203 Ariz. 399, 55 P.3d 93 (App. 2003) (Florez, J.). The opinion below relied heavily on *Amfac Distribution Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795 (App.) ("*Amfac I*"), *approved as*

3

*supplemented,* 138 Ariz. 152, 673 P.2d 792 (1983) ("*Amfac II*"), which held that a cause of action for legal malpractice in a civil case did not accrue until the underlying civil proceedings, including all appeals, had concluded. The court of appeals determined in this case that Glaze's malpractice claim similarly did not accrue until the criminal proceedings against him were concluded by the order of dismissal entered by the superior court. Because that order was entered on July 6, 1999, the court of appeals held that Glaze's malpractice suit, filed on December 14, 2000, was commenced within two years after the cause of action accrued. *Glaze*, 203 Ariz. at 404 ¶ 16, 55 P.3d at 98.

¶7 Judge Pelander concurred in the result, but only because he felt constrained to do so by *Amfac I* and *Amfac II*. *Id*. at 404 ¶ 18, 55 P.3d at 98 (Pelander, J., concurring). Left to his own devices, Judge Pelander would have adopted the "two-track" approach of *Coscia v. McKenna & Cuneo*, *L.L.P.*, 25 P.3d 670 (Cal. 2001). *Glaze,* 203 Ariz. at 405, 406-07 ¶¶ 24, 27-28, 55 P.3d at 99, 100-01. *Coscia* held that a cause of action for legal malpractice accrues as soon as the plaintiff has actual or constructive notice of his attorney's wrongful conduct. 25 P.3d at 680. If, however, the malpractice plaintiff's criminal proceedings are still ongoing at the time the plaintiff files his malpractice suit, the trial court may stay the malpractice

4

action while the plaintiff pursues his post-conviction remedies. *Id.*

¶8      Judge Brammer dissented, concluding that Glaze's cause of action had accrued no later than April 23, 1997, the date on which he filed his Rule 32 petition alleging ineffective assistance of counsel. *Glaze,* 203 Ariz. at 408 ¶ 36, 55 P.3d at 102 (Brammer, J., dissenting). Although he assumed that the *Amfac* rule requiring termination of the underlying proceedings applied in the context of a malpractice action arising out of a criminal prosecution, *id.* at 407 ¶ 31, 55 P.3d at 101, Judge Brammer believed that Glaze's criminal case had concluded at the termination of his direct appeal, *id.* at 407-08 ¶¶ 33-34, 55 P.3d at 101-02.

## II.

¶9      The parties agree that Glaze's suit is governed by the two-year statute of limitations in A.R.S. § 12-542. *See Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (App. 1996). Section 12-542 provides that certain actions "shall be commenced and prosecuted within two years after *the cause of action accrues*." (Emphasis added.) Other Arizona statutes of limitation have identical language. *See, e.g.,* A.R.S. §§ 12-541 to -544, -546, -548 (2003) (requiring that various actions be commenced within a specified time "after the cause of action accrues"). But these statutes of limitation do

5

not purport to define when a cause of action "accrues." Rather, under § 12-542 and the other general limitations statutes, that analysis has been left to judicial decision.

¶10    The determination of when a cause of action accrues requires an analysis of the elements of the claim presented. For example, it has long been settled that an essential element of a claim for malicious prosecution is that the prosecution terminate in favor of the plaintiff. *See Overson v. Lynch*, 83 Ariz. 158, 161, 317 P.2d 948, 949 (1957). Therefore, for purposes of the one-year statute of limitations governing malicious prosecution claims, A.R.S. § 12-541, this cause of action does not accrue until the underlying prosecution has terminated in favor of the plaintiff. *See Owen v. Shores*, 24 Ariz. App. 250, 251, 537 P.2d 978, 979 (1975).

¶11    No Arizona case addresses when a cause of action accrues when the allegation is that a lawyer's malpractice has caused the plaintiff's criminal conviction. Our cases, however, have repeatedly addressed when a cause for legal malpractice in the civil context accrues. We first turn to an analysis of those cases.

**A.**

¶12    As with all negligence claims, a plaintiff asserting legal malpractice must prove the existence of a duty, breach of duty, that the defendant's negligence was the actual and

6

proximate cause of injury, and the "nature and extent" of damages. *Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (App. 1986). A necessary part of the legal malpractice plaintiff's burden of proof of proximate cause is to establish that "but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit." *Id.*

¶13 Given these elements of the tort claim, a legal malpractice claim accrues when "(1) the plaintiff knows or reasonably should know of the attorney's negligent conduct; and (2) the plaintiff's damages are ascertainable, and not speculative or contingent." *Kiley*, 187 Ariz. at 139, 927 P.2d at 799. Because an essential element of the claim is that the plaintiff was injured by the attorney's malpractice, "[n]egligence alone is not actionable; actual injury or damages must be sustained before a cause of action in negligence is generated." *Amfac II*, 138 Ariz. at 153, 673 P.2d at 793.

¶14 The *Amfac* decisions applied these general principles to a claim that an attorney's negligence in failing to name a proper plaintiff resulted in the dismissal of a lawsuit. *See Amfac I*, 138 Ariz. at 155, 673 P.2d at 795. The plaintiff filed suit more than two years after discovering the attorney's negligence, but less than two years after the conclusion of the appeal in the underlying civil action. *Id.* at 156, 673 P.2d at

7

796. Thus, the issue was "when a cause of action accrues for legal malpractice which occurs during the course of litigation." *Amfac II*, 138 Ariz. at 153, 673 P.2d at 793. We held that the cause of action did not accrue "until the appellate process is completed or is waived by a failure to appeal." *Id.* at 154, 673 P.2d at 794.

¶15     This holding was directly tied to the basic elements of the legal malpractice tort. The defendant in *Amfac* asserted that the plaintiff's cause of action had accrued when the plaintiff knew or should have known of the defendant's negligent conduct. *Id.* That argument, however, ignored "one of the essential elements of a claim for negligence — injury to the plaintiff." *Amfac I*, 138 Ariz. at 156, 673 P.2d at 796. A claim of legal malpractice requires more than negligence by an attorney; in addition, "actual injury or damages must be sustained before a cause of action in negligence is generated." *Amfac II*, 138 Ariz. at 153, 673 P.2d at 793; *id.* at 154, 673 P.2d at 794 ("[E]ven where a plaintiff has discovered actual negligence, if he has sustained no damages, he has no cause of action."). While the underlying civil case is still pending on appeal, the possibility always exists that the malpractice plaintiff will eventually prevail in the civil litigation. *See Amfac I*, 138 Ariz. at 156, 673 P.2d at 796 ("Apparent damage may vanish with successful prosecution of an appeal and ultimate

8

vindication of the attorney's conduct by an appellate court.");

*see also Phillips*, 152 Ariz. at 418, 733 P.2d at 303 (noting that a legal malpractice plaintiff must prove that but for attorney negligence the plaintiff would have prevailed on its claim or defense in the underlying lawsuit). Thus, one of the critical elements of the tort claim, "the injury or damaging effect" to the client caused by the lawyer's negligence, "is not ascertainable until the appellate process is completed or is waived by a failure to appeal." *Amfac II,* 138 Ariz. at 154, 673 P.2d at 794.[1]

**B.**

¶16 In addition to correlating the accrual of the cause of action for legal malpractice to the presence of the elements of the tort, the *Amfac* decisions recognized several practical difficulties inherent in legal malpractice actions arising out of alleged negligence in handling litigation. First, "[e]ven

---

[1] In contrast, when a legal malpractice action arises in a non-litigation context, the cause of action accrues when the plaintiff knew or should have known that its attorneys had provided negligent legal advice, and that the attorneys' negligence was the direct cause of harm to the plaintiff, notwithstanding that the plaintiff's damages may not have been fully ascertainable at that time. *Commercial Union Ins. Co. v. Lewis and Roca*, 183 Ariz. 250, 252–53, 902 P.2d 1354, 1356–57 (App. 1995). This is because the harm is "irremedial" or "irrevocable" at that point and will not be avoided by a future appeal or other court proceedings. *Id.* at 254, 902 P.2d at 1358 (quoting *Amfac I*, 138 Ariz. at 156, 673 P.2d at 796, and *Amfac II*, 138 Ariz. at 154, 673 P.2d at 794).

where an attorney's performance in litigation is obviously poor, most clients would not be able to make an informed judgment whether the conduct constitutes malpractice" until "the litigation is terminated and the client's rights are 'fixed.'" *Amfac I*, 138 Ariz. at 157, 673 P.2d at 797. More importantly, if the cause of action were to accrue at the time of the allegedly negligent conduct, rather than at the time the damage became "irremedial," a client would often be required to file suit while the original case was proceeding through the courts and consequently would be forced to obtain either new or additional counsel in the underlying litigation. "Nothing could be more destructive of the attorney-client relationship." *Id.* at 158, 673 P.2d at 798.

¶17      The *Amfac* rule also serves important goals of judicial efficiency. If the cause of action for legal malpractice were to accrue at the time of the allegedly negligent conduct, malpractice plaintiffs might well be required to file suit while their underlying litigation was still pending. Moreover, plaintiffs would be required to argue in their malpractice suits that the underlying case would have had a different outcome in the absence of their attorney's negligence. The trial of the malpractice claim would therefore involve the very evidence that had yet to be presented in the trial of the underlying matter. And even when the trial of the underlying matter has been

completed before a malpractice claim is filed, the trial court in the malpractice action will be forced to go through the exercise of determining how a case would have come out in the absence of the alleged malpractice at the same time that the parties are awaiting an appellate decision that may well answer that very question or remand the case for a new trial.

¶18    These problems are avoided by the *Amfac* approach, which requires the final termination of the underlying litigation before the malpractice cause of action accrues. At least in some cases, this approach will make a malpractice suit unnecessary, either because the underlying litigation eventually is resolved in favor of the malpractice plaintiff, or because the appellate process has made plain that the result in the underlying litigation would have been the same even absent the attorney's alleged malpractice. The *Amfac* rule thus not only prevents premature litigation, but at least potentially prevents the filing of wholly unnecessary malpractice lawsuits.

### III.

### A.

¶19    Glaze's claim in this litigation necessarily is that he would not have suffered the criminal conviction but for Larsen's negligence. *See* Restatement (Third) of the Law Governing Lawyers § 53 cmt. d (2000) ("A convicted criminal defendant suing for malpractice must prove both that the lawyer

11

failed to act properly and that, but for that failure, the result would have been different . . . ."). Thus, many of the same concerns over judicial efficiency and proof of the existence of damage that motivated the *Amfac* rule, requiring termination of the underlying civil litigation as a prerequisite to institution of a legal malpractice action, are also present in the criminal context.

¶20     But there is an important difference between civil and criminal procedure with respect to the alleged errors of counsel. In the civil context, a party generally cannot obtain post-judgment relief because of the inexcusable neglect of counsel. *See Panzino v. City of Phoenix*, 196 Ariz. 442, 445 ¶ 7, 999 P.2d 198, 201 (2000). But a criminal defendant who believes that his conviction was the result of his attorney's ineffective assistance may raise such claims through a petition under Rule 32 for post-conviction relief. *See State v. Spreitz*, 202 Ariz. 1, 3 ¶ 9, 39 P.3d 525, 527 (2002) (holding that ineffective assistance of counsel claims must be raised in Rule 32 proceedings, not in a direct appeal).

¶21     Such post-conviction proceedings in the criminal case may well establish that any alleged negligence by counsel was not the cause of the conviction, either because the attorney did not depart from the applicable standard of care or because the conviction would have ensued in any event. *See Strickland v.*

12

*Washington*, 466 U.S. 668, 688, 693 (1984) (holding that defendant claiming ineffective assistance of counsel must prove that attorney failed to provide reasonably effective assistance "under prevailing professional norms" and that any such departures "actually had an adverse effect on the defense"). Although the standard of proof imposed under *Strickland* arguably does not correspond precisely to the burden placed on a plaintiff in a legal malpractice action, the inquiry in each case is at the very least so similar that post-conviction proceedings often will provide definitive guidance as to whether any alleged legal malpractice actually occurred and/or was the cause of the defendant's conviction. *See McCord v. Bailey*, 636 F.2d 606, 609 (D.C. Cir. 1980) (holding that legal standards for ineffective assistance of counsel and for legal malpractice are equivalent); *Shaw v. State*, 816 P.2d 1358, 1361 n.4 (Alaska 1991) (noting that the standards are "similar").[2] Thus, a rule that requires termination of the underlying criminal proceedings

---

[2] In a legal malpractice action, the plaintiff has the burden of demonstrating by a preponderance of the evidence that "but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit." *Phillips*, 152 Ariz. at 418, 733 P.2d at 303. In a post-conviction criminal proceeding, the defendant is not required to show that counsel's conduct actually altered the outcome of the case, but rather "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. We need not decide today whether there is any difference, practical or theoretical, between these standards.

13

will conserve judicial resources; the outcome of post-conviction proceedings will often demonstrate that no malpractice suit will lie.[3]

**¶22** Other practical concerns also support a rule preventing accrual of criminal malpractice actions while the underlying case is still being litigated. If the criminal defendant were required to institute a civil malpractice suit while his case was still pending in the courts, counsel might well be disqualified from further handling of the criminal case, or at the very least be discouraged from doing so. It is also quite likely that even if the attorney remains on the case after being made a party in the civil suit, he would be distracted from the job before him by defending against the civil negligence claims. *See Shaw*, 816 P.2d at 1361. We are well aware of the litigious nature of many prisoners; a rule that encouraged the early filing of malpractice suits against counsel unsuccessful at trial would likely have a severe and negative impact on the functioning of the criminal justice system, which necessarily relies heavily on appointed counsel and public

---

[3] We are not confronted today with the issue of whether the determination in a post-conviction relief proceeding that ineffective assistance of counsel has been provided has a preclusive effect in a subsequent civil case alleging malpractice. *See* Restatement (Third) of the Law Governing Lawyers § 53 cmt. d ("A judgment in a postconviction proceeding is binding in the malpractice action to the extent provided by the law of judgments.").

defenders' offices to provide indigent defense at trial and on direct appeal. If appointed trial counsel are frequently disqualified from handling a case on appeal because a disgruntled client has filed a malpractice action, the public will be forced to bear increased costs when new counsel take over, as the latter will almost certainly be required to begin from scratch in order to familiarize themselves with past proceedings in the matter. Moreover, defense counsel would routinely have numerous malpractice claims pending against them, with a resulting negative effect on their professional liability insurance premiums.

¶23    Thus, we see no reason to depart from the principles announced in *Amfac* in the context of allegations of malpractice in a criminal proceeding. Just as the malpractice cause of action in the civil context does not accrue until all proceedings in the underlying civil case, including appeals, are terminated, a claim that an attorney's malpractice resulted in the conviction of a criminal client does not accrue until the complete termination of the criminal proceedings. Those proceedings include not only the direct appeal, but also any proceedings involving petitions under Rule 32 and any retrials, appeals from judgments in retrials, or post-conviction proceedings following retrials. *See* Ariz. R. Crim. P. 32.3

15

("[Rule 32 proceedings are] part of the original criminal action and not a separate action.").

**B.**

¶24       The accrual of a cause of action for malpractice in the course of criminal representation depends not only on the fact that the underlying criminal proceedings have been terminated, but also on *how* they were terminated.  Because an essential element of the malpractice claim is that the plaintiff would not have been convicted in the criminal action but for his attorney's negligence, the malpractice suit is in essence a collateral attack on the conviction.  Principles of finality and respect for judgments have led "most jurisdictions addressing the issue" to conclude that "a convicted defendant seeking damages for malpractice causing a conviction must have had that conviction set aside" as a prerequisite to obtaining damages in a malpractice action.  Restatement (Third) of the Law Governing Lawyers § 53 cmt. d.

¶25       The decisions from other jurisdictions addressing this issue vary somewhat in their language.  *See*, *e.g.*, *Shaw*, 816 P.2d at 1360 & n.3 (concluding that "post-conviction relief" is a prerequisite to filing a legal malpractice claim); *Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999) (holding that "a convicted criminal defendant must obtain appellate or postconviction relief as a precondition to maintaining a legal

16

malpractice action" and that "the statute of limitations on the malpractice action has not commenced until the defendant has obtained final appellate or postconviction relief"); *Johnson v. Schmidt*, 719 S.W.2d 825, 826 (Mo. 1986) (holding that a criminal defendant must first be "successful in securing post-conviction relief upon a finding that he was denied effective assistance of counsel" before bringing a legal malpractice claim); *Stevens v. Bispham*, 851 P.2d 556, 566 (Or. 1993) (holding that malpractice plaintiff must "allege 'harm' in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise"); *Adkins v. Dixon*, 482 S.E.2d 797, 801 (Va. 1997) (holding that successful post-conviction relief was a part of the legal malpractice cause of action, and therefore, the statute of limitations did not begin to run until post-conviction proceedings had terminated). Despite the various wording of the holdings in these cases, each agrees either expressly or implicitly on one critical point — an element of the cause of action for legal malpractice is that the criminal conviction has been set aside, and the cause of action for malpractice does not accrue until that has occurred.

¶26     While some cases suggest that the conviction must be reversed through a particular post-judgment proceeding, we believe such a rule unnecessary. Convictions can be vacated in

17

a variety of ways. It would make little sense to allow one criminal defendant injured by his counsel's malpractice to sue if the conviction were reversed in a Rule 32 post-conviction proceeding for ineffective assistance, while denying the same right to a defendant whose conviction was vacated on some other basis on direct appeal, or to one whose conviction was vacated without the necessity of a Rule 32 ineffectiveness petition because the State agreed to set aside the conviction upon discovering proof of actual innocence. The requirement that the conviction be set aside arises from our respect for the finality of the judgment in the criminal case. If that judgment is vacated by any lawful means, the plaintiff should not be barred from pursuing civil remedies against counsel simply because of the form of the reversal.

¶27     Rather, "any post-conviction relief suffices," *Shaw*, 816 P.2d at 1360 n.3, as long as the underlying criminal proceedings are thereby terminated favorably to the defendant. While we need not delineate today all the methods by which such a favorable termination may occur, the law governing suits for malicious prosecution provides ample useful guidance on this score. *See* Restatement (Second) of Torts § 659 (1977) (listing ways in which a criminal proceeding can be terminated in favor of the accused sufficient to allow a suit for wrongful prosecution); *id.* at §§ 660, 661 (listing "indecisive"

18

terminations); *cf. Heck v. Humphrey*, 512 U.S. 477, 485–86 (1994) (holding that in a 42 U.S.C. § 1983 action alleging malicious prosecution the "plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").  In this case, in which the superior court dismissed the charges against Glaze with prejudice, there can be no doubt that this requirement was met.[4]

## C.

¶28     California, while adhering to the majority rule that "appellate or other postconviction relief [is] a predicate to recovery in a criminal malpractice action," *Coscia*, 25 P.3d at 674, has adopted a "two-track" approach to the statute of limitations issue, *id.* at 680.  Under this approach, the

---

[4]     At least one jurisdiction, California, requires that a malpractice plaintiff not only have had his conviction set aside as a prerequisite to filing a malpractice suit, but also that he then allege and prove "actual innocence" in the ensuing negligence action.  *Coscia*, 25 P.3d at 672-73.  We are not confronted today with any questions about the substantive level of proof required in the malpractice suit, and nothing in our opinion should be read as adopting such a rule.  Even a party unable to prove actual innocence may be injured by attorney malpractice; it is enough for the recovery of damages to require that the plaintiff prove that his conviction was proximately caused by his attorney's negligence and that the underlying criminal proceedings, for whatever reason, have terminated in his favor.

malpractice plaintiff is required to file his claim within the applicable malpractice period even if he has not yet obtained post-conviction relief; the malpractice suit is then stayed while the plaintiff pursues such relief. *Id.*

¶29 Larsen urges us to adopt this "two-track" approach. He argues that requiring plaintiffs to file suit within two years after they know or should have known of the lawyer's negligence will serve to prevent stale litigation and place defendants on notice of possible claims. *See Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 464, 799 P.2d 801, 805 (1990) (noting that statutes of limitation are aimed at protecting defendants and courts from stale claims, and at protecting defendants from prolonged economic or psychological uncertainty).

¶30 We decline that invitation. At the outset, it is worth noting that the "two-track" approach in *Coscia* arose at least in part from California's particular statute of limitations, which required that the malpractice action be brought no later than four years from the date of the wrongful act or omission. *Coscia*, 25 P.3d at 677 (citing Cal. Civ. P. Code § 340.6(a)). Thus, under California law, the statute of limitations would have expired in many cases before the criminal defendant could have obtained the reversal of his conviction.

The "two-track" approach thus served to protect the plaintiff against the loss of his cause of action.

¶31     Unlike the California statute, A.R.S. § 12-542 has no arbitrary limit on the time in which legal malpractice claims can be brought.  Rather, the only question is when the "cause of action accrues."  As noted above, the general rule is that a cause of action accrues when all of the elements of the cause are present and the plaintiff either knows or should have known of them.  Because we hold that favorable termination of the criminal proceedings is an element of the cause of action for malpractice, it logically follows that the cause does not accrue until favorable termination occurs.  *Cf. Owen*, 24 Ariz. App. at 252, 537 P.2d at 979 (holding that cause of action for malicious prosecution does not accrue under applicable statute of limitations until favorable termination of underlying criminal proceedings).[5]

---

[5]     Larsen also relies upon *Gebhardt v. O'Rourke*, 510 N.W.2d 900 (Mich. 1994), in support of the "two-track" approach. But the Michigan statute of limitations requires suit to be brought within two years of the attorney's last day of service, or six months after the plaintiff discovered, or should have discovered the claim, whichever is later.  *Id*. at 902. Moreover, in Michigan, the malpractice plaintiff is not required to obtain post-conviction relief in order to bring the civil suit.  *Id.* at 905-08.  Thus, it was clear in Michigan that the malpractice cause of action would often accrue while criminal proceedings were still pending.  The "two-track" approach recognized that both civil and criminal proceedings would necessarily be pending at the same time, and simply allowed the

21

¶**32**      Moreover, the "two-track" approach presents serious problems of judicial administration.  It encourages the filing of malpractice suits that may be unnecessary, because the criminal defendant/malpractice plaintiff will often ultimately be unable to obtain a favorable termination in the criminal action.  Although the civil suit may be stayed pending completion of the criminal proceedings, the stay does not avoid the conflict problems that will arise when a defendant in a criminal matter brings suit against his current counsel.  And, because a "two-track" system implicitly assumes that the malpractice cause of action accrues within two years of the discovery of counsel's negligence, malpractice suits will thus often be required to be filed while cases still are on direct appeal, thus maximizing the chances for conflict.

¶**33**      Nor do we believe that the rule we adopt today will result in the filing of stale claims or seriously impact the ability of counsel to defend legal malpractice trials.  Although the criminal process may last longer in many cases than civil proceedings, appeals in complex civil cases may also last for years; yet *Amfac* holds that a malpractice claim, even one arising from actions or omissions early in the representation, does not accrue until all appeals are complete.  As *Amfac I*

---

civil action to be stayed pending resolution of the criminal case.

22

noted, the dangers of delays are lessened when the alleged malpractice occurs during litigation, because generally "a record will have been made of the actions which form the substance of the later malpractice action" in "court pleadings or in hearing transcripts" in the underlying litigation. 138 Ariz. at 158, 673 P.2d at 798.[6]

¶**34** Moreover, unlike the civil context, in which the attorney/defendant may never learn during the underlying proceedings that his client claims malpractice, criminal counsel will usually be made aware of such a claim before the criminal proceedings conclude. Such claims must usually be raised in a defendant's first Rule 32 petition, *Spreitz*, 202 Ariz. at 2 ¶ 4, 39 P.3d at 526, and defense counsel — who may be called as a witness or otherwise notified of the challenge to his effectiveness in the Rule 32 petition — will thus usually be put on notice of a potential malpractice claim.

---

[6] Counsel have ethical obligations to safeguard client files. *See* Ariz. R. Sup. Ct. 42, ER 1.15 and 1.16. Thus, unless different arrangements have been made with the client, criminal defense counsel routinely will retain client files well beyond the termination of representation. *See* Ariz. Comm. on Rules of Prof'l Conduct Op. 98-07 (June 3, 1998) (stating that indefinite retention of files "is appropriate in homicide, life sentence, and lifetime probation matters;" in "most other matters," file retention for five years after termination of representation is appropriate). Therefore, in most if not all malpractice cases arising out of criminal litigation, the lawyer will also have access to the case file in preparing a defense.

**IV.**

¶35    For the reasons discussed above, we hold that a cause of action for legal malpractice that occurs during the course of criminal litigation does not accrue until proceedings in the criminal matter have been terminated favorably to the criminal defendant.  In this case, the proceedings so terminated on July 6, 1999, when the superior court dismissed the criminal charges against Glaze with prejudice.  Because the legal malpractice action was filed on December 14, 2000, it was commenced less than two years after the cause of action accrued, and thus was timely under A.R.S. § 12-542.

¶36    The opinion of the court of appeals is vacated, and this case is remanded to the superior court for further proceedings consistent with this opinion.


_____
                                 Andrew D. Hurwitz, Justice
CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


24