NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0401n.06

No. 24-5822

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Aug 15, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JOHN J. SHUFELDT, M.D., | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., | ) ) | |
| Defendant-Appellee. | ) ) ) ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and THAPAR, Circuit Judges.

**CLAY, Circuit Judge**. Plaintiff John J. Shufeldt, M.D., appeals the district court's order granting summary judgment to Defendant Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson") on his legal malpractice claim. Because we find the district court correctly applied Delaware's business judgment rule to conclude that Shufeldt failed to raise a genuine dispute of material fact as to the causation prong of his legal malpractice claim, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual History

The following facts are undisputed, unless noted otherwise. John Shufeldt, a medical doctor, is the founder of NextCare Holdings, Inc. He was also NextCare's former Chairman of the Board, former Chief Executive Officer, and formerly the largest shareholder. NextCare is a

corporation that owns and runs urgent care facilities throughout the United States. It is headquartered in Arizona but was incorporated in Delaware.

In 2008, an outside investor, Enhanced Equity Fund, L.P. ("EEF") obtained a stake in NextCare through a "Series A" stock transaction. In the Series A transaction, EEF obtained approximately 24% of the company and reduced Shufeldt's majority ownership interest to approximately 46%. The Series A transaction also gave EEF the right to appoint three directors to NextCare's board. EEF appointed Malcolm Kostuchenko, Andrew Paul, and Don Steen. Two of EEF's appointed directors, Kostuchenko and Paul, were directly affiliated with EEF—they were managing partners at the equity fund. The third, Steen (now deceased), was not affiliated with EEF. Shufeldt gained the right to appoint four directors through the Series A transaction. He appointed himself, Fred Brown, Breaux Castleman, and David Lowenberg. Shufeldt had no prior relationship with his appointed directors, and the directors had no prior affiliation with EEF or NextCare.

In 2010, NextCare came under fire for billing insurance providers for unnecessary medical testing. The trouble began when one of NextCare's largest insurance payors, Blue Cross Blue Shield of North Carolina, removed NextCare from its network and demanded roughly $2.5 million in reimbursements for allergy and flu tests administered by the company. Later that year, in August 2010, the Department of Justice ("DOJ") began an investigation into NextCare for potential violations of the False Claims Act as a result of unnecessary medical testing, alleging that NextCare's testing program constituted Medicare fraud. The government initially contended that NextCare was liable for billions of dollars in fines and treble damages, but NextCare eventually settled with the government for $10 million. After the DOJ initiated its investigation, additional insurance companies objected to NextCare's testing program and demanded reimbursements from

NextCare. Shufeldt denied any wrongdoing, but he nevertheless resigned from the NextCare board and resigned his position as CEO. He still held his shareholder stake in the company.

After Shufeldt's resignation, in mid-August 2010, the six remaining board members reached a consensus that NextCare would face stark financial consequences without a cash infusion by October 2010. Initially, the board approved an issuance of "Series C" preferred stock, with EEF and Goldman Sachs purchasing equity. In the first formulation of the Series C transaction, the preferred stock would convert to common stock at a rate of $0.07 per share. But on the evening of October 3, 2010, Kostuchenko emailed the board indicating that Goldman Sachs had dropped out of the transaction. Instead, EEF alone offered to purchase the shares of NextCare's Series C Preferred Stock, but on different terms. Kostuchenko sent the board a presentation indicating that an independent valuation of NextCare (performed at EEF's behest) valued the company at $41 to $48 million, but the $0.07 conversion transaction overvalued the company at $52 million. EEF was still willing to invest in the preferred equity funding, but at a common share conversion price of $0.02 per share, given NextCare's liabilities, lower than expected operating results, increased cash requirements, and Goldman Sachs reneging. The NextCare board, with a four-person majority comprised of the non-EEF affiliated members, approved the issuance of the Series C Preferred Stock at the $0.02 conversion price on October 4, 2010. Kostuchenko and Paul abstained from the vote.

The parties dispute the extent to which the board members felt coerced to approve the transaction. Shufeldt cites that one of his appointees, Fred Brown, "felt that he had no choice but to approve the terms of the Series C financing as approved by EEF or else NextCare would go out of business." R. 235, Page ID #4663. And Shufeldt claims that another appointee, Castleman, was compelled to vote for the transaction based on EEF's presentation of NextCare's financial

3

picture. But Shufeldt admits that his appointees acted in the best interests of the company. There exists no evidence that the fourth vote in favor of the transaction, EEF appointee Don Steen, was pressured to vote any particular way.

On October 15, 2010, NextCare sent notice of the conversion transaction to its shareholders, including Shufeldt. The notice stated that, per the board vote, NextCare was authorized to sell 744,601 shares of the Series C stock at a purchase price of $10.00 per share and initial conversion price of $0.02 per share. NextCare offered existing shareholders, including Shufeldt, the right to purchase the Series C stock up to their existing pro rata ownership interest in the company.

Shufeldt received the notice some time in 2010. Shufeldt did not purchase shares from the offering of the Series C stock. Therefore, his equity in the company was significantly diluted by the stock issuance, to roughly 10%, while EEF gained a 68% holding.

In December 2012, Shufeldt sent an email to a Baker Donelson attorney, Adam Winger, indicating that he and other common stockholders believed their NextCare shares had been improperly diluted by the NextCare board's actions. On February 11, 2013, Shufeldt retained Baker Donelson. Winger, on behalf of Baker Donelson, agreed that the firm would represent Shufeldt "in his 'potential claim against NextCare Holdings, Inc.'" R. 247, Page ID #4932.

Baker Donelson never filed a suit against NextCare on Shufeldt's behalf. As relevant here, Shufeldt asserts that the statute of limitations on his claim against EEF and NextCare for breach of fiduciary duty under Delaware law expired on October 6, 2013. It is disputed whether Winger mentioned or conducted research on the statute of limitations for this claim before the limitations period expired.

After learning of the statute of limitations issue, Shufeldt retained Robbins, LLP to represent him in January 2015. In October 2015, Robbins initiated a lawsuit on Shufeldt's behalf against NextCare in Arizona state court, asserting claims of self-dealing and breach of fiduciary duty. NextCare moved to dismiss the suit, arguing that Shufeldt's allegations were time-barred based on Arizona's two-year statute of limitations for claims regarding breach of fiduciary duty. Shufeldt argued against the motion, stating that Delaware's three-year statute of limitations applied, and, in any event, his claims were timely because the statute of limitations was tolled or otherwise equitably estopped. The state court denied the motion to dismiss, concluding that the limitations issue rested on disputed issues of fact it could not resolve at the pleadings stage. After the court ruled on the motion to dismiss, Shufeldt and NextCare entered into a confidential settlement agreement, under which NextCare paid Shufeldt $2 million and agreed to pay Shufeldt additional liquidity payments based on the occurrence of conditions set forth in the agreement.

## B. Procedural Background

On July 24, 2017, Shufeldt filed suit in the district court, alleging that Baker Donelson committed legal malpractice by failing to inform him of the applicable statute of limitations on his claims against NextCare before the statute ran, and because of Baker Donelson's negligence, he was unable to file a timely suit against NextCare. Shufeldt requested compensatory damages stemming from the loss of his timely breach of fiduciary duty suit and the return of fees he paid to Baker Donelson, along with attorneys' fees and costs. He later amended his complaint to clarify his claims and add information about a tolling agreement for the legal malpractice claims. Baker Donelson moved to dismiss the amended complaint on the ground that Shufeldt was judicially estopped from claiming that Baker Donelson had been negligent in allowing the statute of limitations to expire. The district court granted Baker Donelson's motion to dismiss, and a panel

of this Court reversed, ruling that the district court erred in applying judicial estoppel to bar Shufeldt's claims. The case was remanded for further proceedings.

After remand, the parties engaged in discovery. On June 27, 2023, Baker Donelson filed a motion for summary judgment, arguing in part that Shufeldt's legal malpractice claim failed for lack of causation: Shufeldt could not establish that his breach of fiduciary duty claim against NextCare would have been successful. Because the Series C transaction was protected by the business judgment rule, Shufeldt could not establish that Baker Donelson's failure to inform him of the applicable statute of limitations would have caused him to lose the suit.

The district court granted summary judgment to Baker Donelson on Shufeldt's legal malpractice claim. The district court agreed that to win his malpractice case, Shufeldt must prove that, but for Baker Donelson's negligence, he would have been successful in prosecuting a suit against NextCare. The district court found that Shufeldt could not have prevailed on his underlying breach of fiduciary duty claim against NextCare because the claim was foreclosed by the application of Delaware's business judgment rule. Shufeldt did not dispute that the business judgment rule defeated his claims if not rebutted by evidence of the Next Care board's lack of independence, bad faith, or gross negligence. But Shufeldt argued that the board functionally lacked independence because it was controlled by EEF. The district court ruled that there was no genuine dispute of material fact that an independent board approved the Series C transaction, and thus no genuine dispute of material fact that the business judgment rule would have defeated Shufeldt's breach of fiduciary duty lawsuit.

In so ruling, the court declined to consider the affidavit of Thomas Uebler, an attorney retained as an expert by Shufeldt. Baker Donelson argued that the affidavit invaded the district court's prerogative to determine the applicable law, and the court concluded that Shufeldt's

6

argument in rebuttal was underdeveloped. The district court applied the same reasoning to Shufeldt's requested consideration of deposition testimony stating the legal opinions of Gregory Del Gaizo, Shufeldt's Robbins attorney. In addition, the district court dismissed Baker Donelson's motions to exclude Shufeldt as an expert and to exclude Shufeldt's rescissory damages expert as moot.

## II.     DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627 (6th Cir. 2018). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Pittman*, 901 F.3d at 627.

### B. Analysis

The sole issue on appeal in this case is whether the district court erred in granting summary judgment to Baker Donelson based on its conclusion that Shufeldt would fail to prevail on his underlying breach-of-fiduciary duty claim. Both parties correctly agree that to succeed on his legal malpractice claim, Shufeldt must prove that Baker Donelson caused him injury through the firm's negligence, which requires a showing that he would have won his case-within-a-case if it was timely filed. That is the test whether, applying Tennessee's choice-of-law rules, we look to the law in Arizona (where Shufeldt sued NextCare), Alabama (where Baker Donelson is located), or Delaware (where NextCare was incorporated). *See Hataway v. McKinley*, 830 S.W.2d 53, 55 (Tenn. 1992) (first assessing "whether there is conflict" between the laws of various states, then concluding that where such conflict exists, Tennessee courts will apply "the law of the state where the injury

7

occurred . . . unless some other state has a more significant relationship to the litigation."); *see also Glaze v. Larsen*, 83 P.3d 26, 29 (Ariz. 2004) (en banc) (stating that an essential element of a legal malpractice claim in Arizona "is that the plaintiff was injured by the attorney's malpractice"); *Indep. Stave Co. v. Bell, Richardson & Sparkman, P.A.*, 678 So. 2d 770, 772 (Ala. 1996) (per curiam) ("In a legal malpractice case, the plaintiff must show that but for the defendant's negligence he would have recovered on the underlying cause of action, or must offer proof that the outcome of the case would have been different." (internal quotation marks and citations omitted)); *Country Life Homes, LLC v. Gellert Scali Busenkell & Brown, LLC*, 259 A.3d 55, 59 (Del. 2021) (stating that an essential element of a legal malpractice claim in Delaware is "resulting loss" from an attorney's neglect). We therefore focus our attention on the success of Shufeldt's case-within-a-case, as the district court did. We conclude that the NextCare board's Series C transaction was undisputedly protected by the business judgment rule, therefore Shufeldt could not succeed on a breach of fiduciary duty claim. We thus affirm the district court's grant of summary judgment to Baker Donelson.

As an initial matter, Shufeldt argues that the district court abused its discretion by declining to consider the opinion of his expert witness, Delaware attorney Thomas Uebler, and the deposition testimony of Shufeldt's Robbins attorney, Gregory Del Gaizo.[1] *See Flagg v. City of Detroit*, 715

---

[1] Shufeldt additionally argues that the district court erred in dismissing as moot Baker Donelson's motion to exclude Shufeldt himself as an expert in this case, and to exclude Shufeldt's expert on rescissory damages. We address the mootness rulings briefly, starting with Shufeldt's unusual expert self-disclosure.

Shufeldt disclosed to Baker Donelson that he was offering himself as an expert as to "alternatives for meeting short-term liquidity problems that were available to NextCare Holdings, Inc., (NextCare), in 2010 after his separation from the company that were less drastic and more in the company's interest than selling a 36% ownership interest in NextCare to Enhanced Equity Fund." R. 220-6, Page ID #4028. In a previous case, we approached a district court's mootness ruling on a motion to exclude expert testimony as an exclusion of that testimony. *Hill v. Kia Motors Am.*, Nos. 20-5690/5693, 2022 WL 557823, at *5 (6th Cir. Feb. 24, 2022). We concluded that the district court in *Hill* erred in its mootness ruling because the expert evidence effectively excluded

F.3d 165, 175 (6th Cir. 2013) (dictating that we review the district court's decision to exclude evidence for abuse of discretion). We briefly address this threshold issue.

Uebler opined that Shufeldt's breach of fiduciary duty claim was time-barred, but meritorious. Thus, if the claim had been timely, it would have succeeded and resulted in a greater recovery than what Shufeldt received in settlement. Del Gaizo testified similarly. The district court excluded the opinion and testimony because it concluded Shufeldt's arguments for admission were underdeveloped, and alternately because it concluded that the attorneys impermissibly opined on the legal issues in the case. The district court also stated that its consideration of Uebler or Del Gaizo's opinions would not have affected its decision on summary judgment, because the court came to independent conclusions on the issues on which Uebler and Del Gaizo opined. In relevant part, the court ruled that Shufeldt was unable to succeed on his breach of fiduciary duty claim because he failed to rebut the business judgment rule by demonstrating EEF's control over the independent NextCare board. As we discuss below, the district court's conclusions were sound.

---

could have affected the district court's ruling on summary judgment. *Id.* Not so here. As discussed in this opinion, the NextCare board's actions were protected by the business judgment rule because the voting board members exercised their independent judgment in approving the contested transaction. Shufeldt's opinion that there were alternative options available to the board does not rebut the presumption that the directors exercised their business judgment. Therefore, the district court's effective exclusion of the opinion was harmless, and we decline to disturb its mootness ruling. *See* Fed. R. Civ. P. 61. We further decline Shufeldt's request to deny Baker Donelson's motion to exclude in the first instance, as "we are a court of review, not first view." *Taylor v. City of Saginaw*, 11 F.4th 483, 489 (6th Cir. 2021) (internal quotation marks omitted).

We additionally decline to entertain Shufeldt's request to rule in the first instance on Baker Donelson's motion to exclude his rescissory damages expert. Again, we conclude that the district court correctly decided that Shufeldt failed to raise a genuine dispute of material fact as to the success of his breach of fiduciary duty claim, such that he could not succeed on the causation prong of his legal malpractice claim. Having properly decided that Baker Donelson's negligence (if any) failed to cause a breach, the district court was within its discretion to decline to rule on rescissory damages and therefore to moot the issue of admitting Shufeldt's damages expert. *See, e.g.*, *Mendoza v. Burke*, No. 2 CA-CV 2012-0048, 2013 WL 313930, at *2 (Ariz. Ct. App. Jan. 28, 2013).

Therefore, any error in the district court's failure to consider Uebler's expert report or Del Gaizo's deposition testimony was harmless. *See* Fed. R. Civ. P. 61.

We now consider Shufeldt's sole argument against the district court's grant of summary judgment. Shufeldt argues that he raised a genuine dispute of fact as to whether EEF was the controlling shareholder of the NextCare board, and therefore raised a genuine dispute of fact as to whether the business judgment rule protects the board's actions in approving the Series C transaction. Delaware substantive law applies to the analysis of this issue, as NextCare is a Delaware corporation. *See Hicks ex rel. Union Pac. Corp. v. Lewis*, 148 S.W.3d 80, 84 (Tenn. Ct. App. 2003) (dictating that "matters involving the internal affairs of a foreign corporation . . . should be resolved in accordance with the law of the state of incorporation"); *Henkel of Am. v. Bell*, 825 F. App'x 243, 253 (6th Cir. 2020) (applying the analogous Michigan internal affairs doctrine to analyze a breach of fiduciary duty claim under Delaware law).

Delaware law recognizes a claim for breach of fiduciary duty. In this case, Shufeldt alleges that the NextCare board breached its fiduciary duty to the company's stockholders through EEF's use of the board in structuring the self-interested Series C transaction. However, Shufeldt cannot succeed in stating a breach of fiduciary duty claim unless he rebuts the business judgment rule or otherwise circumvents it. *See City of Fort Myers Gen. Emp.'s Pension Fund v. Haley*, 235 A.3d 702, 717 (Del. 2020). The actions of a corporate board are by default protected by the business judgment rule. *See id.* The business judgment rule presumes "that in making a business decision the directors of a corporation acted on an informed basis, . . . and in the honest belief that the action taken was in the best interests of the company [and its shareholders]." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 747 (Del. Ch. 2005), *aff'd,* 906 A.2d 27 (Del. 2006) (alteration in original) (internal quotation marks omitted). Corporate transactions are protected by the rule when

there is "no evidence of fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment on the part of the directors." *Id.* (internal quotation marks omitted). The burden is on the plaintiff alleging an illegal transaction to rebut the business-judgment rule's presumption of good faith with contrary evidence. *Id.* Failure to rebut the presumption results in a plaintiff's failure to obtain a remedy. *Id.*

In the district court and on appeal, Shufeldt attempts to rebut the application of the business judgment rule by arguing that EEF was the "controlling shareholder" of NextCare and unduly influenced the board's decision. Shufeldt's primary argument is that EEF's status as the controlling shareholder mandates that we apply "entire fairness review" to the board's transaction, rather than the business judgment rule. *See* Appellant's Br., 13. Shufeldt's position on "entire fairness review" arises from *Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110 (Del. 1994). In *Kahn*, the Delaware Supreme Court stated that "[a] controlling or dominating shareholder standing on both sides of a transaction, as in a parent-subsidiary context, bears the burden of proving its entire fairness," *id.* at 1115, a reversal of the burden of proof applied in the business judgment rule analysis.

We decline to apply entire fairness review to Shufeldt's breach of fiduciary duty claim because Shufeldt fails to supply evidence that EEF was the controlling shareholder of NextCare. At the time of the Series C transaction, EEF owned 25% of NextCare's stock. "A shareholder who owns less than 50% of a corporation's outstanding stocks does not, without more, become a controlling shareholder of that corporation." *Id.* at 1114 (internal quotation marks omitted). To raise a dispute as to whether EEF was a controlling stockholder, Shufeldt must show evidence of "domination by [the] minority shareholder through actual control of corporation conduct." *Id.* (internal quotation marks omitted). We do not find that Shufeldt evinced such domination.

11

In *Kahn*, there was evidence that the alleged controlling shareholder of Lynch Communication Systems, Alcatel, dominated the corporation's non-Alcatel independent directors. The directors "deferred to Alcatel because of its position as a significant stockholder and not because [the independent directors] decided in the exercise of their own business judgment that Alcatel's position was correct." *Id.* at 1115 (internal quotation marks omitted). Alcatel threatened and intimidated the independent directors into taking its position on several matters, including Alcatel's hostile merger with Lynch, even when the directors expressed disagreement with Alcatel's positions. *Id.* at 1114–15.

In this case, Shufeldt fails to present comparable evidence of EEF's domination over the NextCare board. In the district court, he presented two primary pieces of evidence of EEF's control: (1) that EEF, through Kostuchenko, persuaded the other members of the board to force Shufeldt to resign as NextCare's CEO and Chairman, and (2) that EEF, through Kostuchenko, convinced the NextCare board to vote in favor of the transaction by deceptive means, presenting a valuation of the company as "independent" when it was commissioned by EEF. In each scenario, however, there is no evidence that NextCare's non-EEF directors voted with EEF because of EEF's position as a significant stockholder and against their personal disagreement or judgment. When Shufeldt resigned his positions, the company was in deep financial trouble due to allegations that it billed private insurance companies and government health care programs for unnecessary medical tests. In this situation, it would be reasonable for a company to replace its leadership. Shufeldt does not provide evidence that the independent directors were coerced into doing so when they would otherwise have been reticent.

EEF's eleventh-hour presentation urging the Series C transaction also does not evidence EEF's domination over the NextCare board. Whether Kostuchenko misrepresented the presented valuation of NextCare as an "independent" report is largely irrelevant under the circumstances. The board members had access to the commissioned report, and could read for themselves the report's disclosure that it was commissioned by EEF. Indeed, evidence suggests that the board members were aware of the commission. Castleman testified he read the report carefully and even asked EEF what it paid for the report's commission, reflecting his knowledge that the report was commissioned by EEF and his consideration of that fact. As we discuss further below, the independent board members' votes to approve the transaction reflected their own consideration of NextCare's best interests, apart from EEF's persuasion. Thus, this case is unlike *Kahn*, in which evidence of the Lynch board's dealings reflected board members' susceptibility to Alcatel's position and hostile behavior. We therefore conclude that Shufeldt failed to raise a genuine dispute as to whether EEF was the controlling shareholder of the NextCare board at the time of the contested transaction, and we do not review the Series C transaction for entire fairness on this ground.

Instead, we assess Shufeldt's success on his case-within-a-case breach of fiduciary duty claim based on whether Shufeldt raised a genuine dispute of material fact to rebut the presumption that the Series C transaction was protected by the business judgment rule. He raised no such dispute. To rebut the presumption for the purposes of summary judgment, Shufeldt had to raise a genuine dispute of material fact that NextCare's board lacked a majority of disinterested and independent directors. *See Brehm v. Eisner*, 746 A.2d 244, 257 (Del. 2000). Shufeldt has not raised a genuine dispute that any of the four directors who approved the transaction were "interested or lack[ed] independence relative to the" Series C transaction, did "not act in good

faith, act[ed] in a manner that cannot be attributed to a rational business purpose or reach[ed] their decision by a grossly negligent process that include[d] the failure to consider all material facts reasonably available." *Id.* at 264 n.66; *see also Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002). Delaware courts assess a board's independence on a "director-by-director basis." *In re Walt Disney Co.*, 907 A.2d at 748; *see also In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 995–96 (Del. Ch. 2014), *aff'd sub nom. Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015) (analyzing directors individually to test whether a majority of the board was interested in the transaction at issue). Shufeldt admits that his board appointees—Brown, Castleman, and Lowenberg—"voted in a manner they believed was in the best interests of the company." R. 235, Page ID #4663. And he presents no evidence that EEF's appointed board member, Steen, acted contrary to Next Care's best interests. Therefore, we assess only whether Shufeldt raised a dispute as to the directors' lack of independence.

"Delaware law presumes the independence of corporate directors." *In re KKR*, 101 A.3d at 995. "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Id.* (internal quotation marks omitted). Plaintiffs can show a lack of independence by citing evidence that supports "a reasonable inference that the director is beholden to a controlling person or so under their influence that their discretion would be sterilized." *Id.* (internal quotation marks omitted). As discussed, Shufeldt argued in the district court that EEF, through Kostuchenko, exercised undue influence and control over the NextCare board, such that the voting board members were functionally not independent. And he argued that Kostuchenko misled the board into a rushed vote on the Series C transaction at EEF's price. But these allegations fail to raise a genuine dispute of

material fact as to the NextCare board's independence. The board's decision to approve the Series C transaction was protected by the business judgment rule.

We start with EEF's appointed board member, Steen. As an initial matter, Steen's independence is not compromised solely because he was appointed by EEF. *See In re KKR*, 101 A.3d at 996. And Shufeldt conceded Steen's independence, admitting that "Steen was an independent board member," "was not beholden to EEF," and that "[t]here was no evidence that Mr. Steen ever felt pressured to vote any particular way." R.235, Page ID #4664. There is therefore no dispute that Steen's vote was disinterested and independent.

Shufeldt also fails to dispute that Lowenberg acted independently. There is therefore no dispute that Lowenberg's vote was disinterested and independent.

As to Castleman, Shufeldt argues that deposition testimony indicates that Castleman was unduly influenced by EEF, and therefore that his vote on the Series C transaction was not an independent exercise of business judgment. In the deposition testimony at issue, Castleman testified that EEF's significant lowering of the pre-money valuation of NextCare "seemed reasonable at the time," and that the market assessment "didn't seem outrageous at the time." R. 238, Page ID #4740. Shufeldt argues this is evidence of EEF's influence in urging the NextCare board to accept a misleading valuation. But under the circumstances, Castleman's testimony reflects a reasoned consideration of NextCare's financial position and Castleman's independent belief that the valuation was, in fact, reasonable. Castleman further testified that he independently believed NextCare would be unable to get the funding it needed to stay afloat from sources other than EEF, a fair assessment given the undisputed fact that the board agreed cashflow was needed by October 2010, and that Goldman Sachs had just dropped out of funding. Castleman's testimony thus evinces no coercion on the part of EEF, it rather suggests Castleman's careful consideration

15

of the company's position. Given Shufeldt's concession that Castleman acted in the best interests of NextCare, we find it undisputed that Castleman's vote was disinterested and independent. *See In re Walt Disney Co.*, 907 A.2d at 748.

Shufeldt's argument as to Brown's lack of independence similarly lacks merit. Shufeldt argues that Brown's testimony that EEF "was the only game" in town in terms of saving NextCare shows that the board was beholden to EEF. R. 239, Page ID #4763. But contrary to what Shufeldt claims, Brown's statement does not reflect an assessment of EEF's coercive control over the NextCare board, or even the influence of Kostuchenko's allegedly misleading eleventh-hour presentation. Rather, Brown testified that NextCare "was going under," and only EEF was offering funding at the time the board approved the Series C transaction. *Id.* Brown felt that if the transaction was not approved, the company would go bankrupt. Brown's testimony reflects a reasoned judgment weighing NextCare's dire financial circumstances against EEF's offer. It does not suggest that EEF unduly influenced Brown or manipulated those circumstances to gain approval of the Series C transaction. Coupled with the fact that Shufeldt also concedes that Brown acted in NextCare's best interests, we also find it undisputed that Brown's vote was disinterested and independent. *See In re Walt Disney Co.*, 907 A.2d at 748.

Because Shufeldt cannot raise a genuine dispute of material fact that any voting director failed to exercise their independent, good-faith business judgment in approving the Series C transaction, he cannot raise a genuine dispute of material fact as to his ability to rebut the application of the business judgment rule to his breach of fiduciary duty claim. *See In re KKR*, 101 A.3d at 995–96. The district court was therefore correct in concluding that the business judgment rule would apply to defeat Shufeldt's breach of fiduciary duty claim, and that summary

judgment was properly awarded to Baker Donelson on Shufeldt's overarching legal malpractice claim. We affirm the district court in all respects.

### III.    CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.